The STATE of Ohio, Appellee,

v.

FILCHOCK, Appellant.

[Cite as *State v. Filchock*, 166 Ohio App.3d 611, 2006-Ohio-2242.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

No. 2004–L–194.

Decided May 5, 2006.

</div>

612

Charles E. Coulson, Lake County Prosecuting Attorney, and Alana A. Rezaee, Assistant Prosecuting Attorney, for appellee.

Albert L. Purola, for appellant.

WILLIAM M. O'NEILL, Judge.

{¶ 1} Appellant, Joseph J. Filchock, was found guilty by a jury of aggravated vehicular homicide, vehicular homicide, leaving the scene of an accident, driving with a prohibited blood-alcohol content, and driving under the influence of alcohol. He received a prison term of six years on the first charge and concurrent six-month terms on the other charges. On appeal, Filchock challenges the constitutionality of his sentencing procedure, the propriety of his arrest, the trial court's guidance to the jury following a jury question, and the sufficiency of the evidence. On review, we affirm the convictions, but reverse the sentence pertaining to the conviction for aggravated vehicular homicide and remand the cause for resentencing.

{¶ 2} Filchock and Dorothy Duhaime were each proceeding eastbound on Interstate 90 in Concord Township, Ohio, on November 4, 2002. Filchock was driving a Dodge truck, and Duhaime was driving a smaller Mazda truck. At approximately 9:15 p.m., Filchock, traveling at a high rate of speed, rear-ended Duhaime's vehicle, causing it to leave the highway and hit a tree. Duhaime was pronounced dead at the scene of the accident.

{¶ 3} Filchock was indicted for aggravated vehicular homicide in violation of R.C. 2903.06(A)(1), a felony of the second degree. The elements of this charge require that the operator of a motor vehicle must have caused the death of another as a proximate result of committing a driving-under-the-influence ("DUI") offense.

{¶ 4} A second aggravated vehicular homicide charge, pursuant to R.C. 2903.06(A)(2), was also lodged against him. The elements of this second count of the indictment differ in that the operator of a motor vehicle must have recklessly

caused the death of another. A conviction under this latter count constitutes a felony of the third degree.

{¶ 5} Filchock was also indicted pursuant to R.C. 4549.02, leaving the scene of an accident that resulted in the death of another. This crime is a felony of the third degree. Counts four and five of the indictment were driving while under the influence of drugs or alcohol and driving with a prohibited blood-alcohol content, respectively. These were misdemeanor counts and were charged pursuant to R.C. 4511.19(A)(1) and 4511.19(A)(2), respectively.

{¶ 6} Filchock filed a motion to suppress to challenge the propriety of the trooper's arrest. His argument was that Sergeant Kreft of the Ohio Highway Patrol did not have probable cause to arrest because he did not witness the accident.

{¶ 7} At the suppression hearing, Trooper Smith testified that he had been dispatched to the scene of the accident, that when he came on the scene, the fire department and sheriff's deputies were already there, and that one of the deputies found a license plate registered to Filchock. Trooper Smith relayed the information about the plate, the owner of the plate, and the owner's address to another trooper, Sergeant Kreft. He also learned the identity of the driver of the Mazda truck and that she was deceased.

{¶ 8} Sergeant Kreft went to Filchock's home. Filchock admitted that he was the driver of the Dodge truck that was involved in the accident and explained that the other driver had changed lanes in front of him. The sergeant smelled a strong odor of alcohol about his person, noticed that his eyes were bloodshot, and observed that his speech was slow and deliberate. Filchock stated that he had consumed one drink at home, but did not have any alcohol prior to returning home. He also stated that he had just returned home from work, but his wife stated that she understood him to have just come from dinner with co-workers. The sergeant and Filchock then went to the rear of Filchock's home. The Dodge truck was parked behind the house, concealed from the road. The sergeant observed that the front end of the Dodge truck had sustained significant damage and that the airbags had deployed. The sergeant escorted Filchock to the front seat of his patrol car. He asked him to make a written statement as to what happened. Filchock refused to give a statement until he had talked to an attorney. Sergeant Kreft read the *Miranda* warnings to Filchock at that time.[1] Filchock refused to submit to field-sobriety tests. Sergeant Kreft arrested Filchock for driving under the influence ("DUI") and leaving the scene of an accident. Filchock was then transported to the highway patrol post, where he refused to submit to a breathalyzer. The sergeant then transported Filchock to

---

1. *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

Lake East Hospital for a blood draw. The blood specimen was collected at 11:15 p.m. It tested at .157 grams percent by weight of blood.

{¶ 9} The trial court overruled Filchock's motion to suppress. In so doing, it found that the warrantless arrest was valid based upon "the facts and circumstances of this case." The court was influenced by "[t]he fact that the matter was a felony and the circumstances are exigent." The trial court further held that, notwithstanding that the blood draw may have happened more than two hours after the accident, such a chemical test was admissible at trial. Finally, the court held that no inadmissible searches took place during the investigation and that no improper statements were given by Filchock.

{¶ 10} At trial, two witnesses who were in a trailing vehicle testified that Filchock was driving at speeds up to ninety miles per hour, that he was swerving in and out of lanes, and that he collided with the rear end of Duhaime's truck with sufficient force to push it off the road into the woods. They also saw Filchock's vehicle come to rest in the median strip approximately 2,000 feet away from the point of impact.

{¶ 11} Filchock testified at trial. He is a carpenter by trade and was working in Summit County that day. After work, he went to a local restaurant, where, he admits, he consumed three to four margaritas. The restaurant is about 40 miles from his home in Concord Township. He stated that he left the restaurant at about 8:30 p.m. His account was that he was driving home at a normal speed. Soon after he entered I–90 eastbound, another vehicle cut him off, and for the next few miles, he and the driver of the other vehicle were trying to outmaneuver each other. According to Filchock, they were both engaging in "monkey business." He stated that he came upon Duhaime's vehicle suddenly, as it was traveling very slowly. He tried to swerve to avoid colliding with her vehicle, but was unable to do so and hit her left rear bumper. After the impact, his airbags deployed, he lost control of his vehicle, and he wound up on the median strip. After about ten minutes, he started his truck and drove home, parking the truck behind the house. Approximately seven to eight minutes after he arrived home, the highway patrol officer showed up.

{¶ 12} In the further presentation of his defense, Filchock introduced other facts and circumstances in order to cast reasonable doubt on whether his operation under the influence of alcohol was the "cause" of Duhaime's death. Specifically, his expert testified that Duhaime was traveling at too slow a speed— between 40 and 52 miles per hour—and, therefore, the contention is that her slow speed was the "cause" of her own death. He also testified about the "monkey business" with another vehicle on the road, a Volkswagen, as if to say that the maneuvering of the Volkswagen, which caused Filchock to swerve in order to gain a favorable position on the roadway, was the "cause" of Duhaime's death. This

testimony was part of Filchock's defense and was meant to cast doubt on whether his impaired operation of his motor vehicle was the "direct cause" of the accident.

{¶ 13} The jury instruction on causation relative to count one was as follows:

{¶ 14} "Cause is an essential element of the offense. Cause is an act or failure to act which in the natural and continuous sequence directly produces the death and without which it would not have occurred.

{¶ 15} " * * *

{¶ 16} "Now the charge goes on and it states that the defendant caused the death of Dorothy Duhaime as a proximate result of committing a violation of Section 4511.19(A) which is the driving under the influence of alcohol or drugs statute.

{¶ 17} "So you're required to find that the death was the result, that is the direct, that's what proximate cause means, it is that you must find a direct relationship between the cause and the resulting injury[.] * * * [T]he party alleging that the proximate cause existed must prove not only that the other party caused the death but that there is a direct relationship between the cause and the resulting death.

{¶ 18} "Proximate cause is an act or failure to act which in a natural and continuous sequence directly produces the death and without which it would not have occurred.

{¶ 19} "Cause occurs when the death is the natural and foreseeable result of the act or failure to act."

{¶ 20} During jury deliberations, the jury posed four questions to the court. In response to these jury questions, the trial court responded to each one in a separate writing. The court's responses were furnished to the jury over their lunch hour break, not in open court and not in the presence of the parties or their attorneys. The questions, and the court's responses, are as follows:

{¶ 21} "(1) We would like the definition of the following words: wreckless [sic], cause, and knowingly. [In response to the first question, the trial court repeated its instructions on the elements of "recklessness," "risk," "knowingly," and "cause."]

{¶ 22} "(2) What is the difference between count 1 and count 2? [In response to the second question, the trial court stated that count one requires the jury to find that Filchock caused the death of Duhaime as direct result of being under the influence of alcohol; and that count two requires the jury to find that Filchock recklessly caused the death of Duhaime while operating a motor vehicle.]

{¶ 23} "(3) If we find guilty on count 1 do we have to vote on count 2? [In response to the third question, the trial court answered in the affirmative.]

{¶ 24} "(4) Does directly mean the only factor?"

{¶ 25} In response to the fourth question, the trial court asked the jury to explain what it meant in more detail. The jury then came back with a fifth question, which was, "[d]oes direct mean the only cause of the accident. In Count 1."

{¶ 26} In response to this last question, the trial court gave the following response:

{¶ 27} "Regarding Count One:

{¶ 28} "You must find the elements:

{¶ 29} "1.   Date

{¶ 30} "2.   Venue

{¶ 31} "3.   The defendant did

{¶ 32} "4.   While operating, or participating in the operation of a motor vehicle

{¶ 33} "5.   Caused (directly) the death of Dorothy Duhaime

{¶ 34} "6.   As a proximate result of driving while under the influence of alcohol.

{¶ 35} "You are limited to considering the above elements in the context of the charge.   You may not consider other causes than the one specified.

{¶ 36} "You are to further consider the following instruction in making your determination:

{¶ 37} "**OTHER CAUSES NOT A DEFENSE.**   There may be one or more causes of an event.   However, if a defendant's act or failure to act was one cause, then the existence of other causes is not a defense.

{¶ 38} "**INTERVENING CAUSES.**   The defendant is responsible for the natural consequences of the defendant's unlawful act or failure to act, even though death was also caused by the intervening act or failure to act of another person."

{¶ 39} The jury found Filchock guilty of Count One of the indictment, that being aggravated vehicular homicide.   It found him not guilty of Count Two, another count of aggravated vehicular homicide, but found him guilty of the lesser charge of vehicular homicide, a misdemeanor.   It also found him guilty of Counts Three, Four, and Five, leaving the scene of an accident, driving with a prohibited blood alcohol content, and driving while under the influence of alcohol, respectively.   Filchock was given a six-year prison sentence on count one and six months for each of the other counts, all sentences to run concurrently.

{¶ 40} Filchock filed a motion for new trial, which the trial court denied.

{¶ 41} Filchock has asserted four assignments of error, the first of which follows:

{¶ 42} "Joseph Filchock's six-year prison sentence violates the Jury Trial Clause of the Sixth Amendment of the U.S. Constitution and the corresponding provision of the Ohio Constitution."

{¶ 43} Here Filchock is arguing that R.C. 2929.14(B)(2), which allows the trial court to impose more than the shortest sentence for an offense, is unconstitutionally invalid under *Blakely*.[2] The recent case of *State v. Foster* held that R.C. 2929.14(B)(2) must be severed from Ohio's sentencing statutes because that statute requires "judicial factfinding before imposition of a sentence greater than the maximum term authorized by a jury verdict or admission of the defendant" and is, therefore, unconstitutional.[3]

{¶ 44} For this reason, this matter will be returned to the trial court for resentencing.

{¶ 45} However, at resentencing, the trial court shall reconsider only the imposition of the six-year sentence. The other sentences imposed upon Filchock have not been challenged in this appeal and will not be disturbed. The third paragraph of the syllabus of *State v. Saxon* states:

{¶ 46} "An appellate court may modify, remand, or vacate only a sentence for an offense that is appealed by the defendant and may not modify, remand, or vacate the entire multiple-offense sentence based upon an appealed error in the sentence for a single offense."[4]

{¶ 47} Therefore, the trial court shall resentence only with respect to the conviction for aggravated vehicular homicide. The balance of Filchock's sentences remain undisturbed.

{¶ 48} Filchock's first assignment of error has merit.

{¶ 49} Filchock's second assignment of error states:

{¶ 50} "The trial court erred in its reply to the jury's question, during deliberations, regarding 'direct' and 'only' cause of the accident, by giving

---

2. *Blakely v. Washington* (2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403.

3. *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, paragraph one of the syllabus, citing *Apprendi v. New Jersey* (2000), 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 and *Blakely v. Washington*, supra.

4. *State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, 846 N.E.2d 824, paragraph three of the syllabus.

inconsistent and confusing answers, thereby misleading the jury to the prejudice of Joseph Filchock."

{¶ 51} With respect to the responses given by the trial court to the jury's questions, Filchock argues that the trial court gave two additional instructions not called for by the facts of the case and that the effect of giving the two additional instructions was to mislead the jury.

{¶ 52} In this respect, argues Filchock, the situation is analogous to the situation in *State v. Harvey*.[5] In *Harvey*, which involved a drive-by shooting during which the defendant and another individual exchanged gunfire, the defendant was charged with aggravated murder. He was observed with a .45 caliber handgun before the shooting. He admitted on videotape that he had fired several shots on the night in question. Though the bullet did not remain in the victim's body and was never found, the coroner testified that the passage of the bullet through the body was consistent with a .45 caliber handgun shot. The trial court's instructions to the jury included relevant instructions on causation and proximate cause and irrelevant instructions on multiple, intervening, and superseding causes. This court held that:

{¶ 53} "[The irrelevant instructions], although correct statements of the law, were not applicable to the facts of this case. Only one bullet killed [the victim]; there was no other cause contributing to his demise. Therefore, the instructions on multiple causation were extraneous and should not have been given."[6]

{¶ 54} Because of the irrelevant instructions, the jurors in *Harvey* inquired whether they could still convict the defendant of aggravated murder if they weren't sure that his bullet caused the death of the victim. The trial court refused to answer the question. This court said that the trial court should have answered the question:

{¶ 55} "Under these circumstances, the judge should have answered the question by telling the jury that, if they were not convinced beyond a reasonable doubt that appellant's bullet killed [the victim], they must find him not guilty of aggravated murder. Leaving the jury to struggle with instructions which were, in light of the facts, extraneous and confusing, without clarification, was an abuse of discretion."[7]

{¶ 56} We do not find *Harvey* applicable to the instant case. Unlike in *Harvey*, where one bullet killed the victim, the "cause" of Duhaime's death was

---

5.  *State v. Harvey* (May 2, 1997), 11th Dist. No. 95–L–192, 1997 WL 269195.

6.  Id. at 8, 1997 WL 269195.

7.  Id. at 9, 1997 WL 269195.

open for the jury's deliberation. From the testimony at trial, the "cause" of her death could have been the fact that Filchock was operating a motor vehicle under the influence of alcohol; it could have been caused by his reckless or negligent operation of a motor vehicle; it could have been caused by Duhaime's slow speed; or it could have been caused as a result of the "monkey business" with the Volkswagen. Specifically with respect to count one, the question for the jury was whether there was evidence beyond a reasonable doubt that Filchock's act of operating of a motor vehicle under the influence of alcohol was the direct cause of Duhaime's death and without which the death would not have happened.

{¶ 57} Moreover, we do not accept Filchock's argument that the additional instructions given by the trial court had the effect of misleading the jury. On the contrary, the instructions on "other causes" and "intervening causes" were correct statements of the law as applicable to this case. As stated above, the "cause" of Duhaime's death was a jury question, and the additional instructions merely clarified that Filchock would be criminally responsible for his acts even if other "causes" came into play.

{¶ 58} The second assignment of error is without merit.

{¶ 59} Filchock's third assignment of error states:

{¶ 60} "The trial court erred in denying the pretrial motion to suppress evidence insofar as it raised the question of the inadequate evidence to support the arrest."

{¶ 61} " 'Appellate review of a motion to suppress presents a mixed question of law and fact.' " [8] The appellate court must accept the trial court's factual findings, provided they are supported by competent, credible evidence.[9] Thereafter, the appellate court must independently determine whether those factual findings meet the requisite legal standard.[10]

{¶ 62} The general rule is that a police officer may not make a warrantless arrest for a misdemeanor unless the offense is committed in the presence of the officer.[11] An exception to this requirement was created by the Supreme Court of Ohio in the case of *Oregon v. Szakovits*.[12] *Oregon* held that under

8. *State v. Lyons*, 11th Dist. No. 2004–T–0035, 2005-Ohio-4649, 2005 WL 2133698, at ¶ 18, quoting *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at ¶ 8.

9. *State v. Burnside* at ¶ 8, citing *State v. Fanning* (1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583.

10. Id., citing *State v. McNamara* (1997), 124 Ohio App.3d 706, 707 N.E.2d 539.

11. R.C. 2935.03.

12. *Oregon v. Szakovits* (1972), 32 Ohio St.2d 271, 61 O.O.2d 496, 291 N.E.2d 742.

certain circumstances, a warrantless arrest for driving under the influence of alcohol was valid, notwithstanding that the arresting officer did not personally witness the accused operate the vehicle.[13] This court, following *Oregon*, has explained the rule thus:

{¶ 63} "In accordance with the Supreme Court of Ohio's decision in *Oregon*, we confirm that a police officer has probable cause to arrest for driving under the influence where the facts and circumstances within the officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a prudent man in believing that the accused had operated the vehicle while under the influence. In making this determination, each drunk-driving case must be decided on its own particular and peculiar facts." [14]

{¶ 64} In this case, Sergeant Kreft went to Filchock's home based on the identification of the license plate found at the crash scene. When he knocked on the door, Filchock approached and admitted that he was the driver of the vehicle involved in the accident. Filchock then led this officer through his home to the rear of it to show him the damaged truck. The officer observed extensive damage to the front end of Filchock's truck. The officer also obtained Filchock's driver's license from him. Filchock stated that the accident happened because the driver of the Mazda had decided to change lanes. Filchock admitted having had one drink, but denied having anything to drink before he got home. The sergeant smelled a strong odor of alcohol and observed that Filchock's speech and walk were slow and deliberate and that his eyes were bloodshot. The sergeant escorted Filchock to his vehicle, but Filchock refused to perform any field-sobriety tests. Based upon the prior experience of the officer, who had made approximately 800 arrests for driving while under the influence, and the fact that he knew from radio reports that the accident in which Filchock had rear-ended the other automobile was serious, together with his observations of Filchock, the officer had probable cause, based upon the totality of the circumstances, to arrest Filchock for driving under the influence even though he had not personally observed Filchock operating his vehicle. Other factors that militate in favor of probable cause to make this arrest are that only 22 minutes had passed from the time of the accident until Sergeant Kreft arrived at Filchock's home; Filchock's story to the officer as to where he had been before arriving home differed from his wife's report; and Filchock's refusal to submit to field-sobriety

---

13. Id. at 273, 61 O.O.2d 496, 291 N.E.2d 742.

14. *State v. Hummel*, 154 Ohio App.3d 123, 2003-Ohio-4602, 796 N.E.2d 558, at ¶ 30. See also *Kirtland Hills v. Deir*, 11th Dist. No. 2004–L–005, 2005-Ohio-1563, 2005 WL 737411, at ¶ 15– 18.

tests is a factor that may be considered in the determination of whether probable cause existed for the arrest.[15]

{¶ 65} For the foregoing reasons, Filchock's third assignment of error is without merit.

{¶ 66} Filchock's fourth assignment of error states:

{¶ 67} "Count 1, aggravated vehicular homicide, is not supported by sufficient evidence."

{¶ 68} " ' "The test (for sufficiency of the evidence) is whether after viewing the probative evidence and the inference drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. *The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence.* * * * " * * * '

{¶ 69} "In other words, the standard to be applied on a question concerning sufficiency is: when viewing the evidence 'in a light most favorable to the prosecution,' * * * '(a) reviewing court (should) not reverse a * * * verdict where there is substantial evidence upon which the jury could reasonably conclude that all of the elements of an offense have been proven beyond a reasonable doubt.' " [16]

{¶ 70} Thus, "[a]n appellate court must look to the evidence presented to determine if the state offered evidence on each statutory element of the offense, so that a rational trier of fact may infer that the offense was committed beyond a reasonable doubt." [17]

{¶ 71} Moreover, the verdict will not be disturbed on appeal unless the reviewing court finds that reasonable minds could not have arrived at the conclusion reached by the trier of fact.[18] Thus, in the instant case, the state was required to present sufficient evidence to establish that Filchock was operating a motor vehicle under the influence of alcohol and that such operation proximately caused the death of Duhaime. The statute stating the offense provides as follows:

---

15. *State v. Molk,* 11th Dist. No. 2001–L–146, 2002-Ohio-6926, 2002 WL 31813021, at ¶ 19.

16. (Citations omitted and emphasis sic.) *State v. Schlee* (Dec. 23, 1994), 11th Dist. No. 93–L–082, 1994 WL 738452, at *4–5.

17. (Citations omitted.) *State v. Clark,* 11th Dist. No. 2002–A–0056, 2003-Ohio-6689, 2003 WL 22931358, at ¶ 16.

18. *State v. Dennis* (1997), 79 Ohio St.3d 421, 430, 683 N.E.2d 1096.

{¶ 72} "(A) No person, while operating or participating in the operation of a motor vehicle * * *, shall cause the death of another * * * in any of the following ways:

{¶ 73} "(1)(a) As the proximate result of committing a violation of division (A) of [R.C. 4511.19]."[19]

{¶ 74} R.C. 4511.19(A)(1) stated that "[n]o person shall operate any vehicle * * * if, at the time of operation, * * * the person is under the influence of alcohol * * *."

{¶ 75} Filchock concedes that he was operating his truck under the influence of alcohol. The jury found him guilty of operating his motor vehicle with a prohibited blood-alcohol content and operating his vehicle under the influence of alcohol.

{¶ 76} Filchock argues instead that Duhaime's death was not caused by his impaired driving, but by some other cause, such as Duhaime's maintaining a slow speed on the highway, or perhaps the driver of the Volkswagen who was attempting to outmaneuver Filchock on the highway. He further argues that if he had hit a patch of ice and killed his passenger, or if he had been side-swiped by a semi-trailer truck and had killed someone in the opposite lane, his impaired driving would not have been the cause of the other party's death.

{¶ 77} "It is well established that the definition of 'cause' in criminal cases is identical to the definition of 'proximate cause' in civil cases. * * * The general rule is that a defendant's conduct is the proximate cause of injury or death to another if the defendant's conduct (1) is a 'substantial factor' in bringing about the harm and (2) there is no other rule of law relieving the defendant of liability. * * *

{¶ 78} "A defendant cannot be relieved of criminal liability merely because factors other than his acts contributed to the death, provided such other factors are not the sole proximate cause of death. * * * Indeed, we have specifically stated that the alleged contributory negligence of a victim may not be used as a defense in a subsequent aggravated vehicular homicide prosecution unless it is the sole proximate cause of death."[20]

{¶ 79} By finding Filchock guilty of aggravated vehicular homicide, the jury did not believe that Duhaime's slow speed was the sole or proximate cause of her death.

---

**19.** R.C. 2903.06(A)(1).

**20.** (Footnote and citations omitted.) *State v. Flanek* (Sept. 2, 1993), 8th Dist. No. 63308, 1993 WL 335601, at *6–7.

{¶ 80} Moreover, there was more than sufficient evidence from which a rational trier of fact could have found, beyond a reasonable doubt, that Filchock's operating a vehicle under the influence of alcohol was the cause of Duhaime's death. He was observed to be swerving in and out of traffic; he was driving at a high rate of speed; he fled the scene without calling the police; he had a strong odor of alcohol on his person; he had bloodshot eyes; his speech and walk were slow and deliberate; he placed his vehicle behind his home so that it could not be seen from the street; he refused field-sobriety tests; and his blood-alcohol content was above the legal limit. Filchock testified that he could not rule out the role that alcohol played with respect to the accident and conceded that his testimony at trial was inconsistent with the story he told the trooper on the night of the accident.

{¶ 81} Looked at in the light most favorable to the prosecution, the evidence shows that reasonable minds could conclude beyond a reasonable doubt that Filchock's operation of his motor vehicle under the influence of alcohol was the cause of Duhaime's death.

{¶ 82} This assignment of error is without merit.

{¶ 83} The judgment of the trial court convicting Filchock is affirmed. However, that part of the trial court's judgment entry imposing a six-year sentence for aggravated vehicular homicide is reversed in light of the decision in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470. The remaining sentences imposed upon Filchock remain undisturbed in light of the decision in *State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, 846 N.E.2d 824.

Judgment accordingly.

RICE and O'TOOLE, JJ., concur.