OPINION
{¶ 1} Defendant-appellant, Roger L. Zaken, appeals his convictions from the Ashtabula Municipal Court for Driving Under the Influence of Alcohol ("DUI") and Improper Passing stemming from a motor vehicle collision that occurred on January 25, 2005, in Saybrook Township, Ohio. For the reasons that follow, we affirm.
 {¶ 2} Factual and Procedural Background
 {¶ 3} Sometime after midnight, on January 25, 2005, appellant was involved in a motor vehicle collision after frequenting a local tavern called "The Bugler's Inn." *Page 2 
Appellant hit a car that was parked along the side of State Route 84 that was driven by Dean Feiler ("Feiler"), an individual appellant had played pool with in the bar earlier that evening. Following the collision, Feiler confronted appellant and asked him to pay him for the damage to the car. Appellant refused and drove off. Feiler followed appellant home, and an argument ensued. Feiler called the police.
 {¶ 4} Deputy Rick Schupska ("Schupska") of the Ashtabula County Sheriffs Department responded to the call, spoke with Feiler, and then drove to appellant's residence to further investigate the alleged assault charges. Appellant admitted that he had hit the car and that he had been drinking prior to the collision, but denied assaulting Feiler. After questioning appellant and detecting a strong odor of alcohol on appellant, Schupska called the State Highway Patrol to the scene to investigate the accident.
 {¶ 5} Two state troopers, Sergeant John Altman and Trooper Balcomb, arrived at appellant's residence. The troopers also observed that appellant smelled of alcohol, that his speech was slurred, and that he had bloodshot, glassy eyes. Believing appellant was intoxicated, the officers asked him to voluntarily provide them with a written statement and to perform three standard field sobriety tests. Although appellant refused to provide the troopers with a written statement, he agreed to perform two of the three standard field sobriety tests they requested (the horizontal gaze nystagmis, or HGN test, and the walk and turn test). Appellant refused to take the one leg stand test because he said he had a previous leg injury. Trooper Balcomb observed all six clues for intoxication on the HGN test, and three out of nine of the clues for intoxication on the *Page 3 
walk and stand test. Based upon their observation of appellant and his field sobriety test results, the troopers cited appellant with DUI and improper passing.[1]
 {¶ 6} Prior to trial, appellant's former defense counsel filed a motion to suppress, challenging the administration of the field sobriety tests. The trial court overruled the motion to suppress, and appellant was found guilty in a bench trial. The trial court sentenced appellant to forty-five days in jail, with thirty days suspended. The court also fined appellant $ 650, with $ 300 suspended, suspended his driver's license for one year, and ordered him to attend a Victim Impact Program. Appellant's sentence was stayed pending appeal.
 {¶ 7} Appellant filed this timely appeal and raises the following four assignments of error for our review:
 {¶ 8} "[1.] The trial court erred in denying the Appellant's Motion to Suppress.
 {¶ 9} "[2.] The trial court erred in accepting the appellant's uncounseled blanket waiver of his right to speedy trial.
 {¶ 10} "[3.] The trial court abused its discretion by failing to inquire of appellant whether he understood he waived his right to a jury trial.
 {¶ 11} "[4.] The appellant's conviction was against the manifest weight of the evidence."
 {¶ 12} Motion to Suppress
 {¶ 13} In his first assignment of error, appellant contends that his motion to suppress should have been granted because the police lacked probable cause to "stop" him. *Page 4 
 {¶ 14} When ruling on a motion to suppress, we give "due deference to the trial court's assignment of weight and inferences drawn from the evidence." State v. Perl, 11th Dist. No. 2006-L-082, 2006-Ohio-6100, at ¶ 9, citing State v. Hummel (2003), 154 Ohio App.3d 123, at ¶ 11. We review the trial court's application of the law de novo. Id.
 {¶ 15} In order to justify a warrantless "stop," the officer must have "a reasonable suspicion, based upon specific and articulable facts, that criminal behavior has occurred or is imminent." State v. Gedeon (1992),81 Ohio App.3d 617, 618, citing Terry v. Ohio (1968), 392 U.S. 1. In general, a police officer may not make a warrantless arrest for a misdemeanor unless the offense is committed in the officer's presence. However, the Supreme Court of Ohio in Oregon v. Szakovits (1972),32 Ohio St.2d 271, 272-273, carved out an exception to that general rule by holding that a warrantless arrest for driving under the influence of alcohol was valid even where the officer did not personally observe the accused operate the vehicle.
 {¶ 16} Under the warrantless exception delineated in theOregon decision, we have similarly held that "a police officer has probable cause to arrest for driving under the influence where the facts and circumstances within the officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a prudent man in believing that the accused had operated the vehicle while under the influence. In making this determination, each drunk driving case must be decided on its own particular and peculiar facts."Hummel at ¶ 30; see, also, State v. Filchock (2006),166 Ohio App.3d 611, 2006-Ohio-2242, at ¶ 63.
 {¶ 17} In Filchock, as in the instant case, the arresting officer did not personally observe the defendant operate the vehicle while under the influence. Instead, the *Page 5 
officer in Filchock found the defendant's license plate at the crash scene and went to the defendant's home to question him about the accident. The officer observed the defendant's damaged truck and noticed that the defendant smelled of alcohol, that his speech and walk were slow and deliberate, and that his eyes were bloodshot. The defendant refused to submit to field sobriety tests. Nevertheless, based on his years of experience in arresting individuals under the influence, the officer arrested the defendant. Based on these facts, we found that there was probable cause to arrest the defendant. Consequently, we upheld the trial court's denial of the defendant's motion to suppress.
 {¶ 18} Based on the evidence presented at the suppression hearing, in this case we, likewise, find that there was competent, credible evidence to support the trial court's denial of appellant's motion to suppress since the officer had probable cause to make the investigatory stop and to arrest him for driving under the influence.
 {¶ 19} Trooper Scott Balcomb and Sergeant John Altman testified at the suppression hearing that as part of the accident investigation, they initially went to the crash scene and then spoke to victim, Feiler, who told them that appellant had hit his car. The officers then went to appellant's home to further investigate the matter. Both of the officers testified that appellant had a strong odor of alcohol on his breath. They also observed that appellant was unsteady on his feet and that his speech was slurred. Appellant told them that he had not had any alcohol to drink since arriving home. Appellant submitted to certain field sobriety tests and was arrested. *Page 6 
 {¶ 20} Based upon the evidence adduced at the suppression hearing, we find that under the totality of the circumstances, the officers had probable cause to make the stop and to arrest appellant for DU I. We overrule appellant's first assignment of error.
 {¶ 21} Right to Speedy Trial
 {¶ 22} Appellant acknowledges that he signed a written speedy trial waiver form but contends that the waiver was not knowingly and intelligently made. Thus, he argues that he was deprived of his right to a speedy trial.
 {¶ 23} When reviewing a defendant's claim that he or she was denied the right to a speedy trial, we apply a de novo standard of review to questions of law and the clearly erroneous standard to questions of fact. State v. Evans, 11th Dist. No. 2003-T-0132, 2005-Ohio-1787, at ¶ 32.
 {¶ 24} The right to a speedy trial is guaranteed by the United States and Ohio constitutions. State v. Pachay (1980),64 Ohio St.2d 218, 219; Brecksville v. Cook (1996), 75 Ohio St.3d 53, 55. A defendant may, however, waive his or her right to a speedy trial. In order to be valid, the waiver must either be in writing or made on the record in open court. State v. King (1994), 70 Ohio St.3d 158, syllabus; State v.McLean, 11th Dist. No. 2003-T-0115 and 2003-T-0116, 2005-Ohio-954, at ¶ 12.
 {¶ 25} In this case, appellant signed a written speedy trial waiver. Although he claims that the waiver is invalid, he never raised this argument at the trial court level. R.C. 2945.73(B) makes it clear that in order for a defendant to be discharged from an offense, he or she must raise an alleged violation of speedy trial rights "at or prior to commencement of trial." *Page 7 
 {¶ 26} A defendant cannot raise a speedy trial issue for the first time on appeal. As we stated in State v. Pocius, 11th Dist No. 95-L-179, 1996 Ohio App. LEXIS 5647, at 16, "if an appellant claims on appeal that his right to speedy trial was denied, and the record demonstrates that he permitted the trial to proceed without objection, then he has waived the issue and is barred from raising the issue of the denial of his speedy trial on appeal. * * * A review of the record reveals that appellant never filed any motion objecting to purported denial of this right. Thus, appellant failed to preserve the issue, and, thereby, waived the alleged error for purposes of this appeal." (Citations omitted.); see, also, State v. O'Brien (1987), 34 Ohio St.3d 7, 8, where the Supreme Court of Ohio held that "following an express written waiver of unlimited duration by an accused of his speedy trial rights the accused is not entitled to a discharge for delay in bringing him to trial unless the accused files a formal written objection to any further continuances and makes a demand for trial, following which the state must bring him to trial within a reasonable time."
 {¶ 27} As applied to this case, the record reveals that appellant did not raise an objection to the trial court regarding his speedy trial rights. Nor did he file a motion to discharge the offense pursuant to R.C. 2945.73(B). Thus, we find that appellant has failed to preserve this alleged error for our review.[2]
 {¶ 28} We overrule appellant's second assignment of error. *Page 8 
 {¶ 29} Right to Trial By Jury
 {¶ 30} In his third assignment of error, appellant argues that the trial court erred in failing to advise him of his right to a trial by jury and in failing to advise him of the necessity to demand a jury trial.
 {¶ 31} Appellant was charged with violating R.C. 4511.19(A)(1)(a), a misdemeanor of the first degree, punishable by not more than six months jail time. An offense that carries with it a potential punishment of confinement for less than six months is deemed a "petty offense," which has a direct bearing on the defendant's right to a trial by jury. Crim. R. 2(D).
 {¶ 32} At the outset, we note that the constitutionally guaranteed right to trial by jury is not absolute with respect to misdemeanors.State v. Tate (1979), 59 Ohio St.2d 50, 52. In a "serious offense" case, which is punishable by more than six months confinement, the right to a jury trial is automatic since no written jury demand must be made. However, where, as here, the defendant is charged with a petty offense, there is no absolute, automatic right to a trial by jury. Instead, when a defendant is charged with a petty offense, he or she is only entitled to a jury trial if a timely demand is made in writing prior to trial as specified in Crim. R. 5(A)(5) in order to avoid a waiver under Crim. R. 23(A). State v. Fish (1995), 104 Ohio App.3d 236, 238-239.
 {¶ 33} Crim. R. 5(A)(5) provides in pertinent part:
 {¶ 34} "When a defendant first appears before a judge or magistrate, the judge or magistrate * * * shall inform the defendant: * * * of his right, where appropriate, to jury trial and the necessity to make demandtherefore in petty offense cases." (Emphasis added.) *Page 9 
 {¶ 35} Crim. R. 23(A) states in pertinent part:
 {¶ 36} "In petty offense cases, where there is a right of jury trial, the defendant shall be tried by the court unless he demands a jury trial. Such demand must be in writing and filed with the clerk of court not less than ten days prior to the date set for trial, or on or before the third day following receipt of notice of the date set for trial, whichever is later. Failure to demand a jury trial as provided in this subdivision is a complete waiver of the right thereto."
 {¶ 37} In this case, appellant concedes that he did not make a timely jury demand. Nevertheless, he argues that the trial court erred by failing to inform him that he needed to file a jury demand. The inherent problem with appellant's argument is that appellant did not provide us with an adequate record to review the alleged error.
 {¶ 38} The arraignment transcript we were provided with alludes to the fact that the magistrate conducted an en masse arraignment. The magistrate advised the persons present that if they were charged with a minor misdemeanor, they had the right to a bench trial but not to a trial by jury. He further stated that if any of the individuals did not understand any of their stated rights, that he would further explain these rights to them when their individual case was called. Unfortunately, the transcript we were provided with is incomplete. No explanation is offered as to why there was no full transcription of the individual cases being called. The transcript merely states that the magistrate "continued with misdemeanor traffic offenses." Then, only one conversation was transcribed. There was no transcription of a colloquy between the court and appellant. The transcript of the initial arraignment is, therefore, insufficient for us to *Page 10 
determine whether appellant was, in fact, advised of his right to make a written jury demand.
 {¶ 39} The court in State v. Miyamoto, 3rd Dist. No. 14-05-43,2006-Ohio-1776, was faced with a similar dilemma regarding an insufficient record and the allegation by the defendant that he was not informed of the need to make a jury demand in a petty offense case. The Third District Court of Appeals rejected the defendant's argument on the ground that the defendant did not satisfy his burden of providing the court with an adequate record:
 {¶ 40} "Unfortunately, this Court was not provided with a copy of the transcript of the initial arraignment, where Miyamoto should have been informed of the need to demand a jury trial. The burden is on the appellant, who is claiming error in the proceedings below, to provide the appellate court with a transcript of the proceedings. App. R. 9(B). Absent a complete and adequate record, `an appellate court reviewing a lower court's judgment indulges in a presumption of regularity of the proceedings below.'" Id. at ¶ 10, citing Hartt v. Munobe (1993),67 Ohio St.3d 3, 7.
 {¶ 41} The Miyamoto court further reasoned that in petty offense cases, it was incumbent on the defendant to request that the proceedings be recorded. Id. at ¶ 11. See, also, Crim. R. 22; State v. Skaggs (1978),53 Ohio St.2d 162, 163. Since there was no indication that the defendant made this request, the court presumed the regularity of the proceedings and held that "the failure to provide an adequate record prevents a defendant from arguing that the trial court failed to inform him of the need to demand a jury trial, especially when, as here, the defendant failed to exercise his right to have the proceeding recorded."Miyamoto at ¶ 11. *Page 11 
 {¶ 42} We find the Third District's rationale persuasive and hold that appellant cannot claim that he was never informed of the fact that a jury demand was required because he failed to provide the court with an adequate record to demonstrate that he was not so advised. In this regard, appellant's reliance on State v. Bates, 11th Dist. No. 2005-A-0078, 2006-Ohio-3777, is misplaced. In Bates, we held that the court's failure to inform the defendant of her rights under Crim. R. 5(A)(5) invalidated the entire proceeding against her. Id. at ¶ 22. However, in that case, unlike the present case, we were presented with an adequate transcript from which we could determine that the court did, in fact, fail to comply with Crim. R. 5(A)(5). Because we cannot make this determination in this case, we presume the regularity of the proceedings and overrule appellant's third assignment of error.
 {¶ 43} Manifest Weight of the Evidence
 {¶ 44} Appellant challenges his conviction as being against the manifest weight of the evidence.
 {¶ 45} When reviewing a claim that a judgment was against the manifest weight of the evidence, "an appellate court must review the entire record, weigh both the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered."State v. Floyd, 11th Dist. No. 2005-T-0072, 2006-Ohio-4173, at ¶ 8, citing State v. Martin (1983), 20 Ohio App.3d 172, 175. See, also,State v. Thompkins (1997), 78 Ohio St.3d 380, 387. Unlike a sufficiency of the evidence challenge, "a manifest weight of the evidence claim *Page 12 
contests the believability of the evidence presented." State v.Schlee, 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at 13.
 {¶ 46} Therefore, a "judgment of a trial court should be reversed as being against the manifest weight of the evidence `only in the exceptional case in which the evidence weighs heavily against the conviction.' Thompkins at 387. Furthermore, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of facts. State v. DeHass (1967), 10 Ohio St. 2d 230,227 N.E.2d 212, paragraph one of the syllabus." City of Conneaut v. Johnson, 11th Dist. No. 2004-A-0050, 2005-Ohio-3898, at ¶ 10.
 {¶ 47} Turning to the case at hand, appellant claims that there was no evidence to show that he was impaired at the time he was operating his vehicle; that the evidence established that he had been home for two hours after the accident and that he had drank beer at home; and that the tavern owner's testimony that appellant was not intoxicated was unrebutted. Thus, appellant argues that there was insubstantial evidence in the record upon which the factfinder could reasonably conclude that all the elements of the offense were proven beyond a reasonable doubt.
 {¶ 48} In making this argument, appellant is confusing a claim of insufficient evidence with a claim that the verdict is against the manifest weight of the evidence. See Schlee at 13-14. Nevertheless, we reject appellant's argument and, instead, find that even though there are inconsistencies in the testimony presented, appellant's conviction was not against the manifest weight of the evidence. Such inconsistencies turn, in large part, on the witnesses credibility, which lies within the province of the trier of fact. When assessing witness credibility, "[t]he choice between credible witnesses *Page 13 
and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." State v. Awan (1986), 22 Ohio St.3d 120, 123. "Indeed, the factfinder is free to believe all, part, or none of the testimony of each witness appearing before it." City of Warren v. Simpson (Mar. 17, 2000), 11th Dist. No. 98-T-0183, 2000 Ohio App. LEXIS 1073, at 8.
 {¶ 49} With respect to appellant's argument that he was not impaired at the time of the accident, there was ample evidence presented contra to the testimony of the tavern owner to show that appellant appeared intoxicated after leaving the tavern. Both Dean Feiler and his friend, who was at the bar that evening and was riding in Feiler's car at the time of the accident, testified that appellant was stumbling and had slurred speech. In addition, Deputy Rick Schupska of the Ashtabula County Sheriffs Department and Sergeant John Altman and Trooper Balcomb also observed that appellant smelled of alcohol, that his speech was slurred, and that he had bloodshot, glassy eyes. Although appellant attempted to explain his appearance on his being tired, his negative performance on the standardized field tests helped to confirm that he was, in fact, intoxicated.
 {¶ 50} Appellant also claimed that there was evidence in the record to show that he had consumed more beer after leaving the bar. In actuality, appellant's own testimony does little to support this allegation. By his own admission, he testified that he only had "a couple of sips of beer" after arriving home. This was disputed by Sergeant Altman who testified that appellant denied drinking any alcohol since the crash. Again, this discrepancy bears on the credibility of the witnesses. The trier of fact was free to believe Sergeant Altman's testimony over appellant's. *Page 14 
 {¶ 51} With respect to the time frame for the police arrival at appellant's home, appellant relies on the tavern owner's testimony to argue that he left the bar at around 12:16 a.m., and that he was not questioned by police until approximately two hours later. This testimony was in contrast to Dean Feiler's testimony that he and his brother called the police after leaving appellant's home. Deputy Schupska testified that he had received a dispatch at approximately 2:00 a.m. Again, the conflicting testimony places the witnesses' credibility at issue.
 {¶ 52} In conclusion, we defer to the trial court's judgment concerning determinations of witness credibility and the weight of the evidence. Because there is nothing in the record to suggest that the court lost its way in weighing the evidence and in convicting appellant, appellant's fourth assignment of error is without merit.
 {¶ 53} Accordingly, the judgment of the Ashtabula Municipal Court is affirmed.
CYNTHIA WESTCOTT RICE, J., concurs,
COLLEEN MARY OTOOLE, J., concurs in judgment only.
[1] Appellant was also cited for driving under suspension and no operator's license, but these charges were later dismissed.
[2] It should be noted that much of the delay is attributable to the actions of appellant, who through his attorney, filed several pretrial motions. *Page 1