DECISION. *Page 2 
{¶ 1} Plaintiff-appellant, Jesse Palmer, was convicted of two counts of aggravated vehicular homicide under former R.C. 2903.06(A)(1)(a) and2903.06(A)(2)(a). We find no merit in his five assignments of error, and we affirm the trial court's judgment.
 {¶ 2} The record shows that a red car struck Sheena Peeples as she crossed the intersection at Colerain Avenue and Bank Street. Her body flew high in the air before it fell and her head struck the roadway. She died almost immediately from head injuries.
 {¶ 3} Palmer was the driver of the car. Bystanders at the scene confronted him after he hit Peeples and assaulted him. Police arriving on the scene saw that he had facial injuries. He also appeared to be extremely intoxicated. He was staggering, smelled of alcohol, and had watery, bloodshot eyes.
 {¶ 4} The police officers arrested Palmer and, due to his injuries, took him to the hospital. Officer Michael Flamm questioned him at the hospital. He admitted hitting Peeples, but denied that he had been drinking. Flamm noticed that he smelled of alcohol and that he had bloodshot eyes and slurred speech.
 {¶ 5} Palmer refused to take a blood test. The doctors at the hospital had ordered blood tests as part of his treatment. Flamm obtained a search warrant to obtain Palmer's blood sample from the hospital. Laboratory tests by the coroner's office showed that his blood alcohol level was .252 grams per 100 milliliters, over three times the legal limit of .08. *Page 3 
 {¶ 6} In his first assignment of error, Palmer contends that the trial court erred when it overruled his motion to suppress evidence of his blood-alcohol-test results. He argues that the state failed to demonstrate substantial compliance with Ohio Department of Health regulations for the testing of bodily substances set forth in Ohio Adm. Code 3701-53-05. This assignment of error is not well taken.
 {¶ 7} Appellate review of a motion to suppress presents a mixed question of law and fact. We must accept the trial court's findings of fact as true if competent, credible evidence supports them. But we must independently determine whether the facts satisfy the applicable legal standard.[1]
 {¶ 8} "[I]n a criminal prosecution for aggravated vehicular homicide that depends upon proof of an R.C. 4511.19(A) violation, laboratory test results are admissible only if the state shows substantial compliance with R.C. 4511.19(D)(1) and Ohio Adm. Code Chapter 3701-53, even if the test was conducted in an accredited hospital laboratory."[2] The purpose of substantial compliance with the regulations is to ensure the accuracy of the test results.[3]
 {¶ 9} Palmer first argues that the state failed to prove that his blood was drawn into a vacuum container with a solid coagulant. Ohio Adm. Code 3701-03-05(C) states, "Blood shall be drawn with a sterile dry needle into a vacuum container with a solid anticoagulant, or according to the laboratory protocols as written in the laboratory procedure manual based on the type of specimen being tested." (Emphasis added.) *Page 4 
 {¶ 10} The trial court found that the blood was drawn into a vacuum tube. The emergency-room nurse who had originally drawn the blood testified that she had used a vacuum tube and had sent the blood to the hospital's laboratory. But she also stated that the tube the coroner's lab had tested, and that was presented into evidence, was not the tube she had used.
 {¶ 11} The state then presented the testimony of the manager of the hospital laboratory who had overseen specimen intake and processing. She testified that the tube in evidence was the tube that she had received from the nurse and that it was a vacuum tube. She also explained that, under their normal procedure, the laboratory removed the top of the tube that was used for collecting the blood and replaced it with a stopper. The nurse had not known this procedure since she was only involved in collecting the blood and not in its later testing by the laboratory. Thus, competent, credible evidence supported the court's finding that the blood was collected using a vacuum tube, and this court will not disturb it.[4]
 {¶ 12} But the vacuum tube did not contain a solid anticoagulant. Instead, it contained a gel separator, which was used to separate the blood into its components for various lab tests. The toxicologist from the coroner's lab testified that he had analyzed the blood according to the coroner's office's written protocol memorialized in the office's laboratory-procedures manual. The protocol specifically provided for the analysis of gel-separation tubes. Consequently, the blood was drawn "according to the laboratory protocol as written in the laboratory procedure manual" in compliance with the administrative code. *Page 5 
 {¶ 13} Palmer also argues that the state failed to prove that it had maintained a proper chain of custody and that no one had tampered with the blood sample. Ohio Adm. Code 3701-53-05(E) states, "Blood and urine containers shall be sealed in a manner such that tampering can be detected and have a label which contains the following information: (1) Name of suspect; (2) Date and time of collection; (3) Name or initials of person collecting the sample; and (4) Name or initials of person sealing the sample." Section (F) states, "While not in transit or under examination, all blood and urine specimens shall be refrigerated."
 {¶ 14} The evidence showed that Palmer's blood was kept in a sealed container with all the required identifying information and was properly refrigerated both in the hospital and at the corner's laboratory. It was also properly sealed so tampering could be detected, and access to it was limited. Its whereabouts were documented each step along the way. In fact, the various labels put on the tube by the laboratories were part of the reason the nurse did not recognize it at the hearing. Nevertheless, the hospital lab manager was able to identify the various labels and account for the tube's whereabouts.
 {¶ 15} Palmer relies heavily on the manager's statement that "the hospital did not maintain a legal chain of custody, only an electronic chain of custody." In making this statement, the manager was simply saying that the hospital kept track of lab samples by computer. This layperson's opinion in no way showed that the state had failed to prove the chain of custody. As the trial court stated, "[i]n attacking the chain of custody, Defendant also focuses on the Hospital Lab's use of an electronic chain of custody as somehow inadequate but cites no authority to support such a proposition. Having heard the testimony of all the witness[es] and having reviewed *Page 6 
the exhibits * * *, the Court finds that there is ample, credible testimony [from the state's witnesses] to demonstrate a proper chain of custody from the time Defendant's blood was drawn to the time the sample was presented to the Court as an exhibit."
 {¶ 16} Under the circumstances, we hold that the state substantially complied with the provisions of Ohio Adm. Code Chapter 3701-53. The trial court did not err in overruling Palmer's motion to suppress the blood test results, and we overrule his first assignment of error.
 {¶ 17} In his second assignment of error, Palmer contends that he was denied due process of law due to prosecutorial misconduct in opening and closing statements. He argues that the trial court should have granted his motion for a mistrial. This assignment of error is not well taken.
 {¶ 18} Prosecutors are normally entitled to wide latitude in their remarks.[5] The test for prosecutorial misconduct is whether the remarks were improper, and (2) if so, whether the remarks affected the accused's substantial rights.[6] The conduct of the prosecuting attorney during trial cannot be grounds for error unless that conduct deprives the defendant of a fair trial.[7]
 {¶ 19} Further, the decision whether to grant a mistrial lies within the court's discretion. A trial court should not order a mistrial merely because an error or irregularity has occurred, unless it affects the defendant's substantial rights.[8] The *Page 7 
court should declare a mistrial "only when the ends of justice so require and when a fair trial [i]s no longer possible."[9]
 {¶ 20} Our review of the record shows that even if the prosecutor's conduct was improper, none of the instances of which Palmer complains was so egregious as to affect his substantial rights or to deny him a fair trial. Further, they did not require the trial court to take the drastic step of declaring a mistrial. The trial court's decision to overrule Palmer's motion for a mistrial was not so arbitrary, unreasonable, or unconscionable as to connote an abuse of discretion.[10] Consequently, we overrule Palmer's second assignment of error.
 {¶ 21} In this third assignment of error, Palmer contends that the trial court erred in failing to give his proposed jury instruction. The instruction stated that "[a] pedestrian must not walk on a highway if she is under the influence of a combination of alcohol and a drug of abuse to a degree that makes her a hazard." He argues that the instruction was a correct statement of law and was supported by the evidence. This assignment of error is not well taken.
 {¶ 22} Generally, the trial court must give requested special instructions when they are correct, pertinent, and timely presented.[11] The court need not give a requested special instruction when it is included, in substance, in the general charge.[12] *Page 8 
 {¶ 23} While the proposed instruction was a correct statement of law,[13] it was not supported by the evidence in this case. The evidence did show that Peeples had alcohol and marijuana in her blood at the time she was hit. But it did not show that she was under their influence to a degree that made her a hazard. An eyewitness testified that she was simply walking across the street when she was hit. No evidence showed that she was walking erratically, stumbling, falling, or engaging in any similar conduct.
 {¶ 24} Further, the instruction was not pertinent to the case. The victim's alleged contributory negligence is not a defense to a vehicular-homicide charge unless it is the sole proximate cause of the accident.[14] In this case, the evidence did not show that any action by Peeples was the sole cause of the accident. Further, our review of the record shows that the court adequately instructed the jury on the issue of proximate cause.[15] The trial court did not err in failing to give Palmer's proposed jury instruction, and we overrule his third assignment of error.
 {¶ 25} In his fourth assignment of error, Palmer contends that the evidence was insufficient to support his convictions. He also contends that the convictions were against the manifest weight of the evidence. This assignment of error is not well taken.
 {¶ 26} Our review of the record shows that a rational trier of fact, after viewing the evidence in a light most favorable to the prosecution, could have found that the state had proved beyond a reasonable doubt all the elements of aggravated *Page 9 
vehicular homicide under former R.C. 2903.06(A)(1)(a) and2903.06(A)(2)(a). Therefore, the evidence was sufficient to support the convictions.[16]
 {¶ 27} Further, after reviewing the record, we cannot say that the trier of fact lost its way and created such a manifest miscarriage of justice that we must reverse Palmer's convictions and order a new trial. Therefore, the convictions were not against the manifest weight of the evidence.[17] We overrule Palmer's fourth assignment of error.
 {¶ 28} In his fifth assignment of error, Palmer contends that the trial court erred in sentencing him to consecutive prison terms. He argues that the two convictions for aggravated vehicular homicide under former R.C. 2903.06(A)(1)(a) and 2903.06(A)(2)(a) should have been merged because they involved allied offenses of similar import. We specifically rejected that argument in State v. Hundley.[18]
Consequently, we overrule Palmer's fifth assignment of error and affirm his convictions.
Judgment affirmed.
SUNDERMANN, J., concurs.
PAINTER, P. J., concurs in part and dissents in part.
[1] State v. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372,797 N.E.2d 71, ¶ 8; State v. Hutson, 1st Dist. Nos. C-060274, C-060275, and C-060276, 2007-Ohio-1178, ¶ 8.
[2] State v. Mayl, 106 Ohio St.3d 207, 2005-Ohio-4629, 833 N.E.3d 1216, ¶ 3.
[3] State v. Hassler, 115 Ohio St.3d 322, 2007-Ohio-4947,875 N.E.2d 46, ¶ 15.
[4] See Hutson, supra, at ¶ 12.
[5] State v. Mason, 82 Ohio St.3d 144, 162, 1998-Ohio-370,694 N.E.2d 932; State v. Williams, 1st Dist. Nos. C-060631 and C-060668,2007-Ohio-5577, ¶ 49.
[6] State v. Lott (1990), 51 Ohio St.3d 160, 165, 555 N.E.2d 293;Williams, supra, at ¶ 49.
[7] State v. Keenan (1993), 66 Ohio St.3d 402, 405, 613 N.E.2d 203;Williams, supra, at ¶ 49.
[8] State v. Sage (1987), 31 Ohio St.3d 173, 182, 510 N.E.2d 343;State v. Matthews, 1st Dist. Nos. C-060669 and C-060692, 2007-Ohio-4881, ¶ 17.
[9] Williams, supra, at ¶ 51, quoting State v. Brewster, 1st Dist. Nos. C-030024 and C-030025, 2004-Ohio-2993, ¶ 67.
[10] See State v. Clark, 71 Ohio St.3d 466, 470, 1994-Ohio-43,644 N.E.2d 331; Matthews, supra, at ¶ 18.
[11] State v. Joy, 74 Ohio St.3d 178, 181, 1995-Ohio-259,657 N.E.2d 503; State v. Wellman, 1st Dist. No. C-060484, 2007-Ohio-2953, ¶26.
[12] Wellman, supra, at ¶ 26.
[13] See R.C. 4511.181.
[14] State v. Carter, 2nd Dist. No. 21820, 2007-Ohio-5570, ¶ 27;State v. Filchock, 166 Ohio App.3d 611, 2006-Ohio-2242, 852 N.E.2d 759, ¶ 78;State v. Garland (1996), 116 Ohio App.3d 461, 468, 688 N.E.2d 557;State v. Flanek (Sept. 2, 1993), 8th Dist. No. 63308; Cleveland v.Pellech (M.C.1983), 8 Ohio Misc.2d 37, 38-39, 457 N.E.2d 961.
[15] See Wellman, supra, at ¶ 28; State v. Robinson, 1st Dist. No. C-060434, 2007-Ohio-2388, ¶ 18 and 23-28.
[16] See State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus; State v. Weir, 1st Dist. No. C-050236,2006-Ohio-4127, ¶ 12-19; State v. Kavlich (1986), 33 Ohio App.3d 240,515 N.E.2d 652.
[17] See State v. Thompkins, 78 Ohio St.3d 380, 386-388, 1997-Ohio-52,678 N.E.2d 541; Weir, supra, at ¶ 12-19.
[18] 1st Dist. No. C-060374, 2007-Ohio-3556, ¶ 9-11.