OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs and their oral arguments before this court. Appellant Harold Marsh appeals the decision of the Belmont County Court, Northern Division convicting him of driving under the influence.
 {¶ 2} With this challenge, Marsh brings five assignments of error. Specifically, he claims the trial court erred in not granting his motion to suppress because 1) the arresting officer did not have jurisdiction and therefore made an unlawful arrest; 2) there was no evidence demonstrating that Marsh operated a vehicle; 3) there was no evidence establishing that Marsh's condition was due to the consumption of alcohol; 4) there was no articulable suspicion to justify Marsh's arrest; and, 5) his refusal to take a breath test allegedly came two hours after his arrest.
 {¶ 3} The police had a reasonable, articulable suspicion to warrant an investigative stop and detention, as well as probable cause to arrest. Thus, the officer's extraterritorial arrest, while contrary to statute, is constitutional. Further, a driver sitting behind the wheel of a vehicle stopped in the middle of the road with the keys in the ignition is deemed to be operating a motor vehicle. Coupled with an admission of drinking and the smell of alcohol, there was probable cause to arrest Marsh for Driving Under the Influence. Accordingly, the trial court did not err in denying Marsh's motion to suppress, and his conviction is affirmed.
 Facts {¶ 4} On December 28, 2003, at the request of the Belmont County Sheriff, two Bridgeport Village police officers were dispatched to investigate a stopped vehicle one mile outside of Bridgeport's municipal limits. When the officers arrived at the scene, they found Marsh asleep at the wheel of his vehicle which was parked in the middle of the road with the keys in the ignition. After waking Marsh up, they arrested Marsh for driving under the influence based upon his physical condition, his behavior, and statements.
 {¶ 5} Marsh filed a motion to suppress requesting that all evidence obtained from the officer's stop and detention be suppressed. The trial court overruled this motion. Marsh then entered a plea of no contest, as well as a motion for reconsideration with the trial court which was subsequently denied. Marsh now appeals the original judgment entry convicting him of driving under the influence.
 Extraterritorial Arrest {¶ 6} As his first assignment of error, Marsh claims:
 {¶ 7} "The trial court erred in overruling Appellant's motion to Dismiss based upon the arresting officer's lack of territorial jurisdiction over the area where the arrest was made."
 {¶ 8} R.C. 2935.03(A)(1) governs a police officer's jurisdiction to arrest. It is undisputed in this case that the arresting officer was outside of his territorial jurisdiction when he made the arrest as Marsh's vehicle was located one mile outside of the Bridgeport border. When determining whether an extraterritorial stop triggers the exclusionary rule, a court must determine, under the totality of the circumstances, whether the statutory violation rises to the level of a constitutional violation, i.e., whether the police officer had reasonable suspicion to stop and sufficient probable cause to arrest appellant.State v. Weideman, 94 Ohio St.3d 501, 2002-Ohio-1484.
 {¶ 9} If the totality of the facts and circumstances demonstrate that police had a reasonable, articulable suspicion of criminal conduct sufficient to warrant the investigative stop and detention, and probable cause to arrest, then while that extraterritorial seizure may violate R.C. 2935.03, it does not rise to the level of a constitutional violation requiring suppression of all evidence derived from the stop. Id.
 {¶ 10} In Weideman, an officer who was a half mile out of his jurisdiction observed a vehicle traveling left of center, leave the road twice, and again travel left of center. The officer stopped the vehicle and requested assistance from the Ohio State Highway Patrol. The officer then observed that Weideman, the driver of the vehicle, had bloodshot eyes and smelled of alcohol. The officer detained Weideman who was subsequently arrested by a Highway Patrol officer for driving while under the influence of alcohol.
 {¶ 11} Weideman filed a motion to suppress, arguing that the officer who pulled him over conducted an illegal stop because he was outside his jurisdiction. The Ohio Supreme Court, citing R.C. 2935.03(A)(1), noted that the officer had in fact violated the statute in stopping Weideman's vehicle outside of his jurisdiction. However, employing the balancing test of Wyoming v. Houghton (1999), 526 U.S. 295, to determine whether a governmental action violates the reasonableness requirement of the Fourth Amendment, the Ohio Supreme Court concluded that:
 {¶ 12} "[t]he state's interest in protecting the public from a person who drives an automobile in a manner that endangers other drivers outweighs Weideman's right to drive unhindered. These two factors demonstrate that [the officer's] violation of R.C. 2935.03 does not rise to the level of a constitutional violation." Id. at 506.
 {¶ 13} In State v. Fitzpatrick 152 Ohio App.3d 122, 2003-Ohio-1405, the Sixth District came to the opposite conclusion where an officer outside his jurisdiction merely observed the defendant's vehicle "moving kind of slow." In that case, there was no testimony suggesting that the defendant's manner of driving presented a danger to other motorists. The officer had no reasonable suspicion of criminal activity on behalf of the defendant until after he had left his jurisdiction and discovered that defendant was in possession of illegal plates. Because this violation did not present an imminent safety danger to other motorists, the Sixth District could see no reason why the officer could not have alerted the police with jurisdictional authority to the general location of the vehicle so that they could make the stop. The court explained:
 {¶ 14} "We conclude that the government's interest in making an extraterritorial stop and arrest for a fourth-degree-misdemeanor violation is minimal and outweighed by the serious intrusion upon a person's liberty and privacy that necessarily arises out of a stop and arrest. Therefore, Officer Snow's action in making an extraterritorial stop of appellant's vehicle violates the reasonableness requirement of the Fourth Amendment. Officer Snow's statutory violation in this case does require suppression of all evidence flowing from the stop." Id. at 126.
 {¶ 15} In other cases, however, where traffic infractions occurred which could have endangered other drivers, courts have held that so long as there was probable cause to stop and detain the defendant, there was no constitutional violation necessitating the application of the exclusionary rule.
 {¶ 16} For example, in State v. Crump (June 28, 2002), 2nd Dist. No. 19021, an officer witnessed the defendant weave, speed, and cross the center line several times before the defendant ran his car off the road and struck a tree. The defendant got out of his car and began walking away. The officer pulled up alongside of the defendant to check on him at which point the defendant tried to get into the officer's vehicle. While talking to the defendant about what happened, the officer observed that defendant's speech was slurred, his eyes were glassy, and he had difficulty walking. These signs, coupled with Defendant's erratic driving led the officer to believe that the defendant was driving under the influence of alcohol.
 {¶ 17} The officer used his police radio to request that a Montgomery County Sheriff's deputy be sent to the scene. The officer did not arrest Defendant, however. Once the deputy sheriff arrived, the officer gave him the defendant's driver's license and related what he had observed and his belief that the defendant was under the influence of alcohol. The deputy sheriff subsequently arrested the defendant for driving under the influence of alcohol.
 {¶ 18} On appeal, the Second District denied the defendant's motion to suppress. The court concluded that the initial stop and detention did not rise to the level of a Fourth Amendment violation requiring the suppression of all evidence obtained as a result of that stop.
 {¶ 19} Notably, the situation in Crump did not lead to an arrest by the officer outside of his jurisdiction, but instead involved only a stop and detention of the defendant until an officer with jurisdiction could arrive. However, other courts have extended the Weideman holding to cases where the officer made an arrest regardless of whether the officer called for assistance from someone with jurisdiction.
 {¶ 20} The Second District in State v. Pierce (Dec. 31, 2003), 2nd Dist. No. 19926 held that any evidence obtained as result of defendant's arrest for driving under the influence outside an officer's jurisdiction was nevertheless admissible at trial. The court reasoned that, although the stop was in violation of territorial limits imposed by statute upon the police officer's extra-territorial arrest powers, the only impropriety with the stop was its alleged extra-territorial nature, which was, at most, a statutory violation, rather than a constitutional violation. See also State v. Annis (Oct. 25, 2002), 11th Dist. No. 2001-P-0151; State v. Orihel (Jan. 28, 2002), 4th Dist. No. 01CA33; Statev. Underwood (Jan. 9, 2004), 5th Dist. No. 2003-AP-03 0022.
 {¶ 21} In the present case, Officer Bolton testified that he was dispatched, at the request of the Belmont County Sheriff's Office, to investigate a stopped vehicle that was blocking both lanes of a public road. Officer Bolton and another officer arrived at the scene and discovered that the driver was unconscious, the car was parked in the middle of the road, the car was not running but the keys were still in the ignition. When Officer Bolton saw that the car was occupied, he called in a request to dispatch for assistance from the Ohio State Highway Patrol. However, according to the dispatcher, the OSHP were unable to respond because they were assisting the Belmont County Sheriff with an accident in Bethesda.
 {¶ 22} Next, Officer Bolton attempted to wake Marsh who was still unconscious by knocking on the windows and shaking the vehicle. The other officer opened the driver side door and shook Marsh. When he came to, Marsh grabbed the keys from the ignition and threw them onto the passenger's seat. The officers asked Marsh to get out of the vehicle.
 {¶ 23} Officer Bolton testified that when he first observed Marsh, he had mucous running out of his nose and he was slobbering all over his face. He smelled heavily of alcohol and had urinated in his pants. Officer Bolton further testified that Marsh appeared to be very incoherent and very drunk. The officers had to help Marsh out of the vehicle as he "staggered greatly." They brought him to the front of their vehicle and allowed him to sit on the hood. They were unable to conduct field sobriety tests because Marsh was unable to stand.
 {¶ 24} Officer Bolton asked Marsh if he had been drinking, and if so, how much and how long ago. Marsh responded that he had been drinking at a friend's house that evening and "was unsure how he got where he was * * * and he was almost home. If he would have made it down to the bottom of Old Cadiz Road, he would have been home." The officers then placed Marsh under arrest and took him to the police department in Martin's Ferry. They attempted to get a BAC from the breathalyzer but Marsh refused to participate.
 {¶ 25} We conclude that the officers in this case had reasonable suspicion to investigate Marsh's car which was parked in the middle of the road with its lights off. This clearly was a hazard to anyone driving on that road. Likewise, the officers properly continued to investigate when they saw Marsh unconscious in the vehicle. Finally, the officers had probable cause to arrest Marsh for driving under the influence based upon his physical condition, his behavior, and his statements to the police. Accordingly, despite the fact that the arresting officers were outside of their territorial jurisdiction when they arrested Marsh, the statutory violation did not rise to the level of a constitutional offense. This assignment of error is meritless.
 Operating a Motor Vehicle While Under the Influence {¶ 26} As his second assignment of error, Marsh claims:
 {¶ 27} "The trial court erred in overruling Appellant's motion to dismiss based upon the lack of evidence that established defendant operated a motor vehicle."
 {¶ 28} In State v. Homan (2000), 89 Ohio St.3d 421, 427 the Ohio Supreme Court set forth the standard of review for probable cause for an arrest of an individual for driving under the influence:
 {¶ 29} "In determining whether the police had probable cause to arrest an individual for DUI, we consider whether, at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence. In making this determination, we will examine the `totality' of facts and circumstances surrounding the arrest."
 {¶ 30} Marsh has narrowed the issue to whether or not the State could prove that he had driven the vehicle. He claims the State cannot prove that he had operated a vehicle since no one actually witnessed him driving. This type of argument has been made on numerous occasions to many other courts and it is almost always rejected.
 {¶ 31} Notably, in State v. Cleary (1986), 22 Ohio St.3d 198,199 the Ohio Supreme Court stated that "[t]he term `operating' encompasses a broader category of activities involving motor vehicles than does `driving.' Many jurisdictions have found that a person may operate a vehicle even though the vehicle is not moving. Operation of a motor vehicle within contemplation of the statute is a broader term than mere driving and a person in the driver's position in the front seat with the ignition key in his possession indicating either his actual or potential movement of the vehicle while under the influence of alcohol or any drug of abuse can be found in violation of R.C. 4511.19(A)(1)." Id. at 199.
 {¶ 32} The Supreme Court reiterated this holding in State. v. Gill,
70 Ohio St.3d, 1994-Ohio-403 where it stated in its syllabus that "A person who is in the driver's seat of a motor vehicle with the ignition key in the ignition and who, in his or her body has a prohibited concentration of alcohol, is `operating' the vehicle within the meaning of R.C. 4511.19
whether or not the engine of the vehicle is running."
 {¶ 33} The Supreme Court explained:
 {¶ 34} "Our holdings in Cleary and McGlone were never intended to require the state to prove that the defendant had started the vehicle's engine after consuming alcohol or that the engine was running at the time the defendant is apprehended. A clear purpose of R.C. 4511.19 is to discourage persons from putting themselves in the position in which they can potentially cause the movement of a motor vehicle while intoxicated or under the influence of any drug of abuse." Id. at 154.
 {¶ 35} This rationale set forth in Gill was applied by the Eighth District in City of Cleveland v. Duckworth (July 3, 2002), 8th Dist. No. 880888. In Duckworth, the arresting officer testified that around 1:00 a.m. he found the defendant asleep behind the wheel. The defendant's vehicle was stopped incorrectly within an intersection and impeding the flow of traffic. It was necessary for the officer to make several progressively stronger attempts to awaken the appellant. A strong odor of alcohol emanated from both the defendant and the vehicle. And, finally, the officer testified that the defendant was glassy-eyed and had an unsteady gait. After reviewing this evidence, the Eighth District concluded that the arresting officer had a reasonable suspicion that the defendant was operating a vehicle under the influence of alcohol.
 {¶ 36} Significantly, in State v. Draper (Mar. 31, 2003), 5th Dist. No. 2002CA00297, the Fifth District found that where the defendant was found sitting in her vehicle in the driver's seat, with the keys on the floor mat, directly below the steering column, that the keys were sufficiently within her possession to constitute probable cause that she was operating the motor vehicle.
 {¶ 37} In the present case, Marsh was found in the driver's seat with the keys in the ignition. Following the precedent set by the Supreme Court and other districts, we conclude the trial court did not err in finding that there was probable cause to believe that Marsh had in fact "operated" the vehicle. This assignment of error is also meritless.
 Probable Cause for Arrest {¶ 38} As his third and fourth assignments of error, Marsh claims respectively:
 {¶ 39} "The trial court erred in overruling Appellant's motion to dismiss based upon the arresting officer's lack of evidence that established defendant's condition was due to consumption of alcohol."
 {¶ 40} "The trial court erred in overruling Appellant's motion to dismiss based upon a lack of reasonable and articulable suspicion to justify Defendant's arrest."
 {¶ 41} Marsh admitted to the officer at the scene that he had been drinking alcohol at a friend's house, and he smelled heavily of alcohol. And, as discussed in assignment of error number one, the officer not only had reasonable suspicion to suspect that Marsh was driving under the influence, he in fact had probable cause to make an arrest. Accordingly, these assignments of error are also meritless.
 Refusal to Take Breath Test {¶ 42} As his fifth and final assignment of error, Marsh claims:
 {¶ 43} "The trial court erred in overruling Appellant's motion to exclude from evidence any comment that Defendant refused to submit to a breath test as the request that Defendant provide a breath sample was not made timely to entitle the arresting officer to claim defendant refused to take the chemical test required of him."
 {¶ 44} Marsh has provided no authority in support of this argument and we can find nothing that would suggest this type of evidence would be inadmissible. In fact, it is clear that the refusal to submit to a breath test is relevant, admissible, and may be used against a defendant at trial. South Dakota v. Neville (1983), 459 U.S. 553; Maumee v. Anistik,69 Ohio St.3d 339, 632 N.E.2d 497, 1994-Ohio-157. The Ohio Supreme Court explained in Anistik:
 {¶ 45} "Where a defendant is being accused of intoxication and is not intoxicated, the taking of a reasonably reliable chemical test for intoxication should establish that he is not intoxicated. On the other hand, if he is intoxicated, the taking of such a test will probably establish that he is intoxicated. Thus, if he is not intoxicated, such a test will provide evidence for him; but, if he is intoxicated, the test will provide evidence against him. Thus, it is reasonable to infer that a refusal to take such a test indicates the defendant's fear of the results of the test and his consciousness of guilt, especially where he is asked his reason for such refusal and he gives no reason which would indicate that his refusal had no relation to such consciousness of guilt." Id. at 343 citing Westerville v. Cunningham (1968), 15 Ohio St.2d 121, 122.
 {¶ 46} Applying the Ohio Supreme Court's rationale here, we find it wholly irrelevant when the officers asked Marsh to submit to the tests. If the refusal is relevant in that it serves as indicia of guilt, then it wouldn't matter if Marsh refused before or after the statutory two hour period. If Marsh would have agreed to take the breath test after the two hour limit, then he would have a viable argument that the results of that test should be suppressed. Because he refused to take the breath test, there is no bad evidence to suppress. This assignment of error is also without merit.
 {¶ 47} Accordingly, the trial court did not err by denying Marsh's motion to suppress, and Marsh's conviction is affirmed.
Donofrio, P.J., concurs.
Vukovich, J., concurs.