[Cite as *State v. May*, 2011-Ohio-6637.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | CASE NO. 10 CO 23 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| TERRANCE MAY, Jr., | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:      Criminal Appeal from Columbiana
                                                       County Municipal Court,
                                                       Columbiana County, Ohio,
                                                       Case No. 09 TRC 4411.

JUDGMENT:                                    Reversed and Remanded.


APPEARANCES:
For Plaintiff-Appellee:                     Attorney Robert L. Herron
                                                       Prosecuting Attorney
                                                       Attorney Virginia Barborak
                                                       Asst. Prosecuting Attorney
                                                       Columbiana County Municipal Court
                                                       38832 Saltwell Road
                                                       Lisbon, OH  44432


For Defendant-Appellant:               Attorney Douglas A. King
                                                       91 West Taggart Street
                                                       P.O. Box 85
                                                       East Palestine, OH  44413


JUDGES:
Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Joseph J. Vukovich


                                                       Dated: December 16, 2011

DeGenaro, J.

{¶1} Defendant-Appellant, Terrance L. May, Jr., appeals the June 16, 2010 judgment of the Columbiana County Municipal Court convicting him of one count of operating a vehicle under the influence of alcohol (OVI) following a jury trial. May raises six arguments; first, the trooper lacked probable cause to arrest him and therefore the trial court erred in denying his motion to suppress. Second, he contends the trial court improperly considered his refusal to take the field sobriety and breathalyzer tests as part of its probable cause determination. Third, he claims the trial court improperly admitted hearsay and prior bad acts evidence during trial. Fourth, he contends he received an unfair trial due to misconduct by the prosecutor. Fifth, he claims his conviction was against the sufficiency and the weight of the evidence. Finally, he asserts that even if some of these errors are non-reversible individually that this court should reverse pursuant to the cumulative error doctrine.

{¶2} Upon review, there was ample evidence of probable cause and the trial court's consideration of May's refusal to take the breathalyzer tests as part of its probable cause determination is harmless error. However, the trial court erred by improperly admitting hearsay evidence in violation of May's right to confront the witnesses against him, and we cannot conclude that this error is harmless beyond a reasonable doubt. This resolution moots the balance of May's assignments of error. But because May's conviction is supported by sufficient evidence, both admissible and not, double jeopardy does not attach and May can be retried. Accordingly, the judgment of the trial court is reversed and the cause remanded for a new trial.

## Facts and Procedural History

{¶3} On September 12, 2009, May was driving on State Route 558 in Columbiana County. The weather was clear, it was daylight and there were no adverse road conditions. May lost control of his vehicle, crossed the center lane, hit a utility pole, and ultimately smashed into a garage. The Highway Patrol received a report of the crash and dispatched Trooper Barry Thompson, who arrived approximately 18 minutes later to find May standing on private property, drinking a beer. The trooper ordered May to stop drinking the beer, which he did. However, at a later point during the encounter, May picked up the beer and began consuming again, resulting in an admonition from the

trooper. May maintained that he did not drink any alcohol before the crash, but rather consumed three to four beers *afterwards.* May refused to take the field sobriety tests, but based upon the trooper's observations, which included May's red, glassy eyes, slurred speech, demeanor, inability to follow directions, and the circumstances of the accident, May was arrested for OVI. Once at the trooper post, May refused a breathalyzer test.

{¶4} As a result, May was charged with a first-offense OVI (R.C. 4511.19(A)(1)), a first-degree misdemeanor, and failure to control (R.C. 4511.02), a minor misdemeanor. An additional charge of obstruction of justice was subsequently dismissed without prejudice by the State as it had been brought under the wrong statute.

{¶5} May filed a motion to suppress, alleging that the trooper lacked probable cause to arrest him. During a suppression hearing, the following evidence was adduced. Trooper Thompson, a 12-year veteran of the Highway Patrol testified that on September 12, 2009, at 6:44 p.m. he was dispatched to a crash and arrived at the scene at 7:02 p.m., 18 minutes after receiving the call. Fire department and EMS personnel were already there.

{¶6} Trooper Thompson noticed a vehicle that had been travelling east-bound on State Route 558 which had gone off the left side of the road, and slid sideways into a garage and striking a van that was inside. The road conditions were dry and clear, and the point where the crash occurred followed a bend and slight downgrade in the road. The trooper determined that the driver was May and his passenger was Marcie McManis.

{¶7} The trooper saw May standing in the driveway of the adjoining property, drinking a Busch beer. He ordered May to stop drinking and May complied at that time. Upon speaking with May, the trooper noted an "apparent" odor of alcohol on his breath, which he characterized as "moderate" and "very evident." He also noticed May's eyes were red and glassy, and that at times May's speech was difficult to understand, i.e., "it was slurred and it was very slow." He said it was "very apparent just by looking at the gentleman and speaking with him that he was intoxicated, his demeanor and the way he carried himself."

{¶8} May asked to use the restroom of the property owner and when he returned outside he picked up his beer and began drinking again. The trooper ordered May to

cease, brought him back to his cruiser and resumed the interview. At that point, May's beer was approximately half empty. The trooper further testified: "In speaking with witnesses at the scene that said that when I arrived he was on his second beer." By contrast, May told the trooper that he was on his third or fourth beer since the crash, and denied drinking any alcohol beforehand. The trooper observed a twelve-pack of Busch beer inside of May's car; but there was no testimony regarding how many were empty or full.

{¶9} May's explanation for the loss of control of the vehicle was that he "was tired." He told Trooper Thompson that he was "probably" going the speed limit. However, the trooper opined that May was likely speeding, going too fast to maintain control around the curve in the road.

{¶10} According to the trooper, May refused the field sobriety tests that were offered. May was then placed under arrest for OVI due to: "the crash, the inability to operate the vehicle with reasonable control, [ ] the red, glassy eyes, his speech, [and] his demeanor."

{¶11} On cross, Trooper Thompson admitted that he did not determine how many cans of beer inside of May's car were empty or full. He testified that May was polite and cooperative throughout the encounter, except when he resumed drinking the beer after being ordered to stop. Although May did not have major difficulty walking, the trooper noted that May did "stumble a little bit."

{¶12} He said the witnesses at the scene declined to make written statements and that he did not take their names. May's passenger also declined to give a statement. There were no injuries to either May or his passenger.

{¶13} Trooper Thompson testified that he received training in alcohol detection and apprehension, including observing for problems with divided attention skills and answering questions. He noted that May filled out a form improperly after being given directions; specifically, May signed his name where he was supposed to print it and failed to fill out his address.

{¶14} McManis, May's passenger at the time of the accident, testified that she was with May for most of the day prior to the accident, and that May had not been drinking.

She maintained that she never would have gotten into a car with him had he been drinking. She stated that they crashed because May was going too fast around the bend. She testified that EMT and fire personnel arrived on the scene first and told May to stop drinking but he continued anyways.

{¶15} The trial court denied the suppression motion and the case proceeded to a jury trial. The following evidence was adduced at trial.

{¶16} Trooper Thompson's testimony at trial largely mirrored that from the suppression hearing. However, when he started to testify about what the witnesses at the scene told him about May's post-accident alcohol consumption, defense counsel lodged an objection on hearsay grounds, which was overruled by the trial court.

{¶17} In addition, Trooper Thompson testified more extensively about his experience handling "thousands" of traffic accidents, along with his training in Alcohol Detection and Prosecution, which included controlled drinking trials where a volunteer drinks a controlled amount of alcohol during a period of time and the class observes that person and performs field sobriety tests on him. From this training, for which he had a certificate, the trooper learned that when someone drinks alcohol, it does not affect the person immediately. Rather, the alcohol takes time to absorb into the bloodstream. The trooper stated: "It's going to take a little bit of time to fully get in your blood system, to start seeing the glassy eyes, the divided attention skills * * *, or the slurred speech or the other things that we're looking for." Trooper Thompson testified that based on his training, May's behavior after the crash was inconsistent with someone who had just consumed "a drink or two" in the past 20 minutes. He testified that the time of the crash as 6:45 p.m. was confirmed by May at the scene. Trooper Thompson stated on cross-examination that although he could not tell the exact level that was in May's system, he could say "for sure that [May] was consuming prior to the crash."

{¶18} Further, Trooper Thompson elaborated on the condition of the road, stating that the curve was not a particularly tough one to negotiate. And he noted that it was highly unusual behavior for someone to begin drinking after a traffic accident. A dash-camera video of the scene was played for the jury and admitted into evidence. The audio quality was poor, but the video did show May drinking a beer when Trooper Thompson

arrived. In addition, Trooper Thompson's report and diagrams of the accident scene were admitted into evidence.

{¶19} McManis also testified at trial, expanding on her testimony from the suppression hearing. She described the accident, stating that May was driving too fast. McManis told May to take the bends a little easier, but May responded that he grew up in that area and knew the road. McManis reiterated that May was not drinking before the crash, but began immediately afterwards, having chugged four to five beers before Trooper Thompson arrived. She said she told May that it was not a good idea to start drinking, to which he responded that he was upset and to "shut up." She said that May had just paid off his car and had discontinued full coverage insurance and was therefore upset about the extensive damage.

{¶20} On cross-examination, McManis was questioned extensively about her relationship with May, but denied he was her boyfriend. She did state that her intention was to go back to her home that evening and drink a beer with May, which is why he had purchased it and why it was in the car. She also changed her story about the sequence of events on the day of the crash. Finally, May testified. He claimed that his reckless driving caused the accident, and that he had nothing to drink prior to driving that day. He also testified that he began drinking after the crash because he was upset: "I just got my car paid off, it's a Chrysler 300 M, and I just went from full coverage to liability, and I was pretty upset, and it was a pretty bad accident." He stated that he drank three to four beers before the trooper arrived. May said that he refused the field sobriety tests and the breathalyzer test because he knew he had been drinking at the scene and did not want to "incriminate" himself. He admitted that he lied to the trooper about his speed, i.e., he told the trooper he was driving 45 miles per hour, when he was really driving about 60 miles per hour , which is twenty miles per hour over the speed limit. When asked why he lied he said: "I was nervous. Plus I had a couple beers."

{¶21} In addition, on cross-examination, after May testified that he was "buzzed" when interviewed by the trooper at the scene since he just consumed "three or four beers," the prosecutor confronted May with the trooper's opinion that it would not have been possible for May to exhibit that level of intoxication in such a short time period.

May's response was: "Yeah. He's never been at any of my accidents before I guess." Over objections, the State began questioning May about his prior accidents and OVI's. May conceded that he had some experience with what happens when you are charged with an OVI.

{¶22} The jury returned a verdict of guilty on the OVI and the court found May guilty of the minor misdemeanor failure to control charge. The case proceeded immediately to sentencing, and the trial court issued a sentencing entry on June 16, 2010. The trial court then issued a "resentencing entry" on July 6, 2010, which was identical to the earlier entry in terms of sentence imposed. The July 6 entry appointed counsel for May's appeal and further stated that May's appeal time was to commence the date of the second entry. It is improper for the trial court to attempt to circumvent the appellate rules by ordering an extension of May's appeal time. See *Leroux v. Adult Parole Auth.,* 5th Dist. Nos. 2003CA0083, 2003CA0084, 2004-Ohio-246, at ¶13 ("a trial court may not reenter a judgment at a subsequent date for the sole purpose of fixing a new date for appeal.") But the error is harmless since May's notice of appeal was timely filed from the first sentencing entry.

{¶23} The trial court subsequently granted a stay of May's sentence pending the outcome of this appeal. For ease of analysis, some of May's eight assignments of error will be discussed together or out of order.

### Probable Cause to Arrest

{¶24} May's first and second assignments of error assert respectively:

{¶25} "The trial court erred in finding probable cause for the arrest of Defendant/Appellant for an OVI offense."

{¶26} "The trial court improperly considered the Defendant/Appellant's refusal to submit to field sobriety tests and/or to submit to a BAC test as factors constituting probable cause for arrest for an OVI offense."

{¶27} May challenges the trial court's denial of his motion to suppress, which presents the appellate court with a mixed question of law and fact. *State v. McNamara* (1997), 124 Ohio App.3d 706, 710, 707 N.E.2d 539. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best

position to resolve factual questions and evaluate the credibility of witnesses. *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at ¶8. Accepting these facts as true, the appellate court conducts a de novo review of whether the facts satisfy the applicable legal standards at issue in the appeal. Id.

{¶28} The standard for determining whether there was probable cause to arrest for OVI is whether, at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence. *State v. Homan* (2000), 89 Ohio St.3d 421, 427, 732 N.E.2d 952 (superseded by statute on other grounds as stated in R.C. 4511.19(D)(4)(b)). That determination is based on the totality of the facts and circumstances surrounding the arrest. Id. Whether or not there was probable cause is a legal issue that we review de novo. See *State v. Salas*, 9th Dist. No. 21891, 2004-Ohio-6274, 2004 WL 2674616, at ¶17.

{¶29} May takes issue with the fact that the trial court considered his refusal to submit to the field sobriety and breathalyzer tests in making its probable cause determination and denying May's motion to suppress. Contrary to May's contention, however, the failure to take field sobriety tests can be factored into the probable cause calculus. *State v. Derov*, 7th Dist. No. 08 MA 189, 2009-Ohio-4810, at ¶17, citing *State v. Molk*, 11th Dist. No. 2001-L-146, 2002-Ohio-6926, at ¶26; *State v. Arnold* (Sept. 7, 1999), 12th Dist. No. CA99-02-026; and *State v. Buehl* (Jan. 26, 2000), 9th Dist. No. 19469. See, also, *State v. Filchock*, 166 Ohio App.3d 611, 2006-Ohio-2242, 852 N.E.2d 759, at ¶64.

{¶30} Conversely, the trial court erred by considering May's refusal to take the breathalyzer test when determining probable cause. This is because May did not refuse the breathalyzer test until *after* he was arrested, and it is axiomatic that probable cause is required to arrest for OVI. See, e.g., *Beachwood v. Sims* (1994), 98 Ohio App.3d 9, 15, 647 N.E.2d 821, citing *Beck v. Ohio* (1964), 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142, ("[o]nce reasonable suspicion is found for an investigatory stop, an officer

must then have probable cause to arrest a suspect without a warrant.") The case cited by the State in its brief, *State v. Marsh*, 7th Dist. No. 04 BE 18, 2005-Ohio-4690, does not support its argument that refusal to take a breathalyzer following an arrest can factor into the probable cause determination.

{¶31} However, this error is harmless because there is ample other evidence demonstrating that the trooper had probable cause to arrest May for OVI. The trooper observed that May had red, glassy eyes, slurred speech, and an odor of alcohol that was "very evident." May failed to follow directions, including an order to stop consuming alcohol. He also failed to fill out a form correctly even after instruction from the trooper. He stumbled a bit when he walked. Further, the circumstances of the accident bolster the finding of probable cause; May lost control of his vehicle on a clear day with no apparent obstructions in the road, crossed the center lane and crashed into a utility pole and then a garage.

{¶32} And although May and his passenger McManis claimed that May had not consumed any alcohol before driving, only after; the 20 minute time-frame between the trooper's dispatch and arrival belies their contentions. In addition, although May claimed to have consumed three to four beers after the accident, the trooper received information from witnesses at the scene that May was in the process of drinking his second beer when the trooper arrived. Although the trooper's *trial* testimony about what the witnesses told him is the subject of a separate assignment of error below, there is no error admitting that hearsay testimony at the *suppression hearing*, because "judicial officials at suppression hearings 'may rely on hearsay and other evidence, even though that evidence would not be admissible at trial.'" *State v. Edwards*, 107 Ohio St.3d 169, 2005-Ohio-6180, 837 N.E.2d 752, quoting, *Maumee v. Weisner* (1999), 87 Ohio St.3d 295, 298, 720 N.E.2d 507, quoting *U.S. v. Raddatz* (1980), 447 U.S. 667, 679, 100 S.Ct. 2406, 65 L.Ed.2d 424.

{¶33} As noted by the trial court, the facts of this case are similar to those in *Filchock*, supra, 166 Ohio App.3d 611. In *Filchock*, the officer went to the defendant's home 22 minutes after an accident, based upon identification of a license plate found at the scene. The defendant admitted he was involved in the accident and the officer

observed heavy damage to the defendant's truck. Filchock admitted to consuming one drink after the accident, but, like May, denied drinking beforehand. The officer smelled a strong odor of alcohol upon the defendant and noticed that his eyes were bloodshot and his speech and walk slow and deliberate. The defendant also refused the field sobriety tests. Based upon the experience of the officer, his observations of the defendant, the facts related to the accident, the passage of only 22 minutes from the time of the accident until the officer arrived at the defendant's home, and the defendant's refusal to take the field sobriety tests, the Eleventh Appellate District held that the officer had probable cause to arrest for OVI. Id. at ¶64.

{¶34} May argues that *Filchock* is factually distinguishable because the defendant there only admitted to having one drink after the accident, while May admitted to drinking three to four. This is a distinction without a difference. Both defendants alleged they began drinking only after the accident, yet exhibited signs of impairment that contradicted their claims. Accordingly, for all of the above reasons, May's first and second assignments of error are meritless.

### Hearsay/Confrontation Clause

{¶35} In his third assignment of error, May asserts:

{¶36} "Defendant/Appellant was denied his constitutional right to confront and cross-exam witnesses against him which the court permitted inadmissible hearsay testimony and where such testimony was not harmless beyond a reasonable doubt."

{¶37} The admission of evidence lies within the broad discretion of a trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice." *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88, at ¶43, citing *State v. Issa* (2001), 93 Ohio St.3d 49, 64, 752 N.E.2d 904. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144.

{¶38} Evid.R. 802 generally prohibits the introduction of hearsay unless the evidence falls under a specific exception to the hearsay prohibition. Hearsay is, "a statement, other than one made by the declarant while testifying at the trial or hearing,

offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). The purpose of the rule against hearsay is to keep unreliable evidence, particularly evidence that is not subject to cross-examination, away from the jury or trier of fact. *State v. Wolff*, 7th Dist. No. 07 MA 166, 2009-Ohio-2897, at ¶74.

**{¶39}** May asserts that the trial court erred by allowing the trooper to testify that witnesses at the accident scene told him that May was drinking his second beer when the trooper arrived at the scene approximately 20 minutes after the accident. During trial, the defense objected, and the State responded that the statement was not offered for its truth, but rather as "part of what [information the trooper] gained during his investigation." Ultimately, the trial court overruled the objection because the declarants' statements were made "after the fact as to the time of the incident."

**{¶40}** This ruling was erroneous. While it is true that the statements concerned May's actions after the accident, this does not change the fact that they were offered *for their truth*. Whether or not those statements are true has significant meaning for this case, because a central factual issue is whether May consumed alcohol and became intoxicated before the accident or afterwards. These hearsay statements do not fall under any of the listed exceptions, nor does the State argue as much in its brief.

**{¶41}** The State's assertion during oral argument that the testimony is admissible pursuant to the present sense impression exception is meritless. The "present sense impression" exception to the hearsay rule, found in Evid.R. 803(1), only applies to, "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter unless circumstances indicate lack of trustworthiness." The declarants did not make the statements to the trooper about May's post-accident alcohol consumption as it was happening. Nor did they speak to the trooper about this immediately when he arrived at the scene. The trooper did not question the declarants until after he had interviewed May and taken May's written statement. Thus, the statements constitute inadmissible hearsay.

**{¶42}** Next we address the related but distinct issue of whether the admission of this hearsay testimony violated May's Confrontation Clause rights. The Sixth Amendment to the United States Constitution guarantees that a person accused of committing a crime

has the right to confront and cross-examine witnesses testifying against him. See *Pointer v. Texas* (1965), 380 U.S. 400, 406, 85 S.Ct. 1065, 13 L.Ed.2d 923. Only those statements that are hearsay pose Confrontation Clause problems.

**{¶43}** The United States Supreme Court has held that the right to confrontation is violated when a hearsay statement that is testimonial in nature is admitted into evidence without the defendant having had the opportunity to cross-examine the declarant. *Crawford v. Washington* (2004), 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177.

**{¶44}** The categorization of a statement as testimonial or nontestimonial is at the heart of Confrontation Clause analysis. If a statement is testimonial, then the Confrontation Clause requires a showing of both the declarant's unavailability and the defendant's opportunity to have previously cross-examined the declarant. *Siler* at ¶21. If the statement is nontestimonial, it is merely subject to the regular admissibility requirements of the hearsay rules. Id.

**{¶45}** Although the U.S. Supreme Court in *Crawford* declined to explicitly define what is "testimonial," it stated that one core class of testimonial statements are statements "that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Id. at 52. Accord *State v. Stahl*, 111 Ohio St.3d 186, 2006-Ohio-5482, 855 N.E.2d 834, paragraph one of the syllabus. "In determining whether a statement is testimonial for Confrontation Clause purposes, courts should focus on the expectation of the declarant at the time of making the statement." Id. In other words, to determine whether a statement is testimonial or nontestimonial, courts must inquire "whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime." *United States v. Cromer* (C.A.6, 2004), 389 F.3d 662, 675; see, also, *State v. Stahl*, 111 Ohio St.3d 186, 2006-Ohio-5482, 855 N.E.2d 834, at paragraph two of the syllabus.

**{¶46}** In a series of subsequent cases, the U.S. Supreme Court excluded from the definition of "testimonial," those "statements * * * made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Davis v.*

*Washington* (2006), 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224.

{¶47} In *Davis*, the Court concluded that statements made during a telephone call to 911, describing an ongoing emergency were nontestimonial. The *Davis* Court also considered a second case involving a sworn statement made to police by the victim at the scene of the incident. The Court concluded that this latter statement was testimonial because it described events in the past, sought to determine what had happened, not what was happening, and was not necessary to resolve the emergency. Id. at 830. See, also, *Washington and Hammon v. Indiana* (2006), 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224; and *Michigan v. Bryant* (2011), 131 S.Ct. 1143, 179 L.Ed.2d 93, (both concerning the ongoing emergency exception.)

{¶48} At first blush, the statements made by the declarants to the trooper would appear to fall under the ongoing emergency exception. The trooper's questioning occurred at the scene of a recent automobile accident where fire and EMS personnel had responded. However, a closer review of the record reveals that the trooper did not ask the declarants about May's alcohol consumption until well after he arrived on the scene. The trooper testified that upon arriving he first spoke to emergency personnel to assess the situation. After learning May was the driver, he interviewed May and took a written statement from him. Only after May completed that statement did the trooper finally question the declarants about May's post-accident alcohol consumption. By the time the statements at issue were made, the emergent nature of the situation had decreased significantly.

{¶49} The statements made by the declarants were testimonial. A reasonable person in the declarant's position would have anticipated his statement being used against May in a criminal prosecution. At the time the declarants were questioned, the trooper had already taken May's statement and he was actively investigating the potential OVI. A reasonable person in that position would assume he was being questioned about the driver's post-accident alcohol consumption as part of an overall investigation into whether that driver was impaired before the accident. Further, there is no indication the declarants were unavailable to testify or that May had previously cross-examined them. Thus the statements, in addition to being hearsay, pose a confrontation problem.

**{¶50}** We cannot conclude that this error is harmless. Harmless error is defined as, "[a]ny error, defect, irregularity, or variance which does not affect substantial rights[.]" Crim.R. 52(A). Any error that is harmless shall be disregarded. Id. "Whether [the] error was harmless beyond a reasonable doubt is not simply an inquiry into the sufficiency of the remaining evidence. Instead, the question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *State v. Haines*, 112 Ohio St.3d 393, 2006-Ohio-6711, 860 N.E.2d 91, at ¶62, quoting *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, at ¶78.

**{¶51}** Here there is more than a reasonable possibility that the hearsay statements contributed to May's OVI conviction. The State relied upon that testimony to prove that May was under the influence of alcohol while operating his motor vehicle. Without the hearsay, we have little evidence of May's level of intoxication prior to the accident, and are left with May's and McMannis' testimony that May did not imbibe before driving, but instead rapidly consumed four or five beers after the crash.

**{¶52}** Although the trooper testified that based on his extensive training, May's behavior after the crash was inconsistent with someone who had just consumed *one or two drinks* within a 20 minute period, the trooper did not opine whether May could have exhibited that level of impairment after consuming *four or five beers* in 20 minutes. And although the trooper testified he was certain May consumed alcohol before the accident, again, this was based upon the hearsay statements that May had consumed one or two beers after the accident. Because of this, we cannot conclude that the trial court's error is harmless beyond a reasonable doubt.

**{¶53}** The remedy for this error is a new trial. The Double Jeopardy Clause permits retrial when a reviewing court determines that a defendant's conviction must be reversed because evidence was erroneously admitted against him, and where such an error was not harmless because the remaining *admissible* evidence would be insufficient to sustain a conviction. *State v. Brewer*, 121 Ohio St.3d 202, 2009-Ohio-593, 903 N.E.2d 284, at ¶17, citing *Lockhart*, supra, 488 U.S. at 35 ("where the evidence offered by the State and admitted by the trial court–whether erroneously or not–would have been sufficient to sustain a guilty verdict, the Double Jeopardy Clause does not preclude

retrial.")

**{¶54}** We caution that our ruling today must not be misconstrued as an approval of the behavior exhibited by May in this case. Due to the trial court's erroneous evidentiary ruling, and that alone, we must reverse and remand for a new trial.

## Sufficiency

**{¶55}** In his sixth assignment of error, May asserts:

**{¶56}** "Defendant/Appellant's conviction is based upon legally insufficient evidence."

**{¶57}** Although we are remanding for a new trial under the third assignment of error, we must still discuss sufficiency since a conviction based upon insufficient evidence bars retrial. *State v. Pepin-McCaffrey*, 186 Ohio App.3d 548, 2010-Ohio-617, 929 N.E.2d 476, at ¶48 (Seventh District), citing *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, citing *Tibbs v. Florida* (1982), 457 U.S. 31, 47, 102 S.Ct. 2211, 72 L.Ed.2d 652.

**{¶58}** "Sufficiency of the evidence is the standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict." *State v. Smith* (1997), 80 Ohio St.3d 89, 113, 684 N.E.2d 668. Thus, sufficiency is a test of adequacy. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541. Whether the evidence is legally sufficient to sustain a verdict is a question of law. Id. In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Smith* at 113.

**{¶59}** In performing a sufficiency review, an appellate court must consider "*all* of the testimony before the jury*, whether or not it was properly admitted.*" (Emphasis sic.) *State v. Peeples*, 7th Dist. No. 07 MA 212, 2009-Ohio-1198, at ¶17, citing *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, at ¶80, citing *Lockhart v. Nelson* (1988), 488 U.S. 33, 40-42, 109 S.Ct. 285, 102 L.Ed.2d 265. The Ohio Supreme Court explained the rationale behind this rule more recently in *Brewer,* supra:

**{¶60}** "By permitting a reviewing court to consider all the evidence presented at trial, *Lockhart's* holding recognizes that the state may rely upon the trial court's evidentiary rulings in deciding how to present its case. 'If the evidence offered by the State is received after [a] challenge and is legally sufficient to establish the guilt of the accused, the State is not obligated to go further and adduce additional evidence that would be, for example, cumulative. Were it otherwise, the State, to be secure, would have to assume every ruling by the trial court on the evidence to be erroneous and marshall and offer every bit of relevant and competent evidence. The practical consequences of this would adversely affect the administration of justice, if for no other reason, by the time which would be required for preparation and trial of every case.'" *Brewer* at ¶19, quoting, *State v. Wood* (Mo. 1980), 596 S.W.2d 394, 398-399; *State v. Gray* (1986), 200 Conn. 523, 538, 512 A.2d 217.

**{¶61}** May was convicted of operating a motor vehicle under the influence pursuant to R.C. 4511.19(A)(1)(a). At trial, May disputed that he was under the influence of alcohol at the time he operated the vehicle, contending he did not consume alcohol until after the accident. However, the State produced sufficient evidence. Trooper Thompson testified that May crashed his vehicle on a dry road during daylight hours. Upon arrival at the scene approximately 18 minutes after the crash, the trooper observed that May's eyes were glassy, and his speech slow and slurred. May stumbled a bit and refused to take the field sobriety tests. He was unable to fill out the witness statement correctly.

**{¶62}** In addition, May was drinking a beer at the scene of the accident, which reflects poor judgment that could indicate alcohol impairment before the crash. Further, for the purposes of sufficiency review, we also consider the hearsay testimony that witnesses at the scene told the trooper May was in the process of drinking his second beer when the trooper arrived at the scene. And the trooper testified that consuming two beers in 18 minutes would not be enough time for the alcohol to enter the bloodstream and impair the driver's functioning. As any rational fact-finder could have found May guilty of OVI based upon the evidence admitted at trial, May's sixth assignment of error is meritless.

## Remaining Assignments of Error

**{¶63}** May's remaining four assignments of error, which involve admission of "other acts" evidence, prosecutorial misconduct, manifest weight and cumulative error, are moot based upon the resolution of his third and sixth assignments of error, as discussed above. Accordingly, we decline to address them. App.R. 12(A)(1)(c).

## Conclusion

**{¶64}** In sum, May's probable cause arguments are meritless. However, the admission of improper hearsay evidence in violation of the Confrontation Clause constitutes error that is not harmless beyond a reasonable doubt. But because the totality of the evidence presented at trial, both admissible and not, is sufficient evidence supporting May's conviction, Double Jeopardy does not attach, and May can be retried. Accordingly, the judgment of the trial court is reversed and the cause remanded for a new trial.

Donofrio, J., concurs.

Vukovich, J., concurs.