[Cite as *State v. Mitro*, 2022-Ohio-3265.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                                    Court of Appeals No.  WD-21-080

       Appellee                                              Trial Court No.  2020-CR-0507

v.

Megan Elizabeth Mitro                                   **DECISION AND JUDGMENT**

       Appellant                                             Decided:  September 16, 2022

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, and
David T. Harold, Assistant Prosecuting Attorney, for appellee.

Lawrence A. Gold, for appellant.

* * * * *

**DUHART, J.**

**{¶ 1}** Appellant, Megan Elizabeth Mitro, appeals from a judgment of conviction

and sentence entered by the Wood County Court of Common Pleas.  For the reasons that

follow, we affirm the judgment of the trial court, but we remand the matter for a nunc pro

tunc entry that conforms with the sentence imposed during the sentencing hearing.

**Statement of the Case**

{¶ 2} On November 19, 2020, appellant was originally indicted in a three-count indictment. Count 1 charged her with felonious assault, in violation of R.C. 2903.11(A)(1) and (D)(1)(b), a felony of the first degree, as the victim was a peace officer who was said to have suffered serious physical harm. Count 2 charged her with failure to comply with an order or signal of a police officer, in violation of R.C. 2921.221(B) and (C)(5)(a)(1), a felony of the third degree. Count 3 charged her with operating a vehicle under the influence of alcohol, a drug of abuse, or a combination of them, in violation of R.C. 4511.19(A)(1) and (G)(1)(b), a misdemeanor of the first degree. Appellant was arraigned on those charges shortly thereafter.

{¶ 3} On April 22, 2021, appellant was indicted, under a second case number, on a single count of aggravated vehicular assault, which was a felony of the third degree based upon the fact that the offense was committed during the commission of a violation of R.C. 4511.19(A). Appellant was arraigned on that charge, and her cases were joined for trial. The charge for aggravated vehicular assault subsequently identified as Count 4.

{¶ 4} After plea negotiations failed, appellant waived her right to a trial by jury. The matter proceeded to a bench trial, which resulted in guilty verdicts on all four counts. The court sentenced appellant to serve terms of imprisonment on each count, as follows: For Count 1, felonious assault, three years; for Count 2, failure to comply with an order or signal of a police officer, 36 months; for Count 3, operating a vehicle under the

2.

influence of alcohol, a drug of abuse, or a combination of them, 180 days; and for Count 4, aggravated assault, 36 months. The sentences for Counts 1 and 2 were ordered to be sentenced consecutively to one another, and the sentences for Counts 3 and 4 were ordered to be served concurrently with one another and concurrently with the sentences imposed in Counts 1 and 2. At sentencing, the court made clear that appellant was sentenced to serve a total of six years in prison and that the sentence could be extended to seven and a half years pursuant to the Reagan Tokes Act. Appellant timely filed the current appeal.

### Statement of the Facts

{¶ 5} The evidence adduced at trial established the following. On October 26, 2020, appellant got into her car and left her home to go to the Rite-Aid, where she intended to purchase alcohol. While backing out of her driveway, appellant struck and damaged two mailboxes that were on the side of the road, across from her home. She succeeded in getting to the Rite-Aid, but while attempting to park there, she struck B.G.'s vehicle, which was located in the parking space across from hers.

{¶ 6} B.G., upon exiting the store, observed that appellant's car was touching his car. He contacted the Perrysburg Police Department's non-emergency line to make a report of the situation.

{¶ 7} Appellant, in the meantime, had gone into the store and selected two bottles of alcohol from the shelves, but the clerk refused to allow the purchase. When appellant

3.

came out of the store, B.G. told her that he had contacted the police and he suggested to her that they exchange insurance information. Appellant refused to exchange insurance information with B.G. and, instead, just sat inside her vehicle. She subsequently attempted to leave the scene and, in so doing, struck B.G.'s vehicle twice more. Before police arrived, appellant exited her vehicle, with the engine still running, and began walking, with her dog, out of the parking lot and down Louisiana Avenue, towards the post office.

{¶ 8} Officer D.C. of the Perrysburg Police Department arrived at the Rite-Aid, and B.G. told him that appellant had left the scene on foot. Officer D.C. drove down Louisiana Avenue to the post office parking lot, where appellant was standing. Officer D.C. advised appellant that she needed to return to the Rite-Aid so he could complete his crash investigation. Appellant complained that it was a long walk, so Officer D.C. agreed to drive her back to the scene.

{¶ 9} Upon arriving back at the Rite-Aid, officer D.C. advised appellant to sit in her vehicle and "turn it off," because he needed to complete his crash investigation and report. Officer D.C. testified that he detected that something was "off" about appellant. He stated that he did not detect the odor of alcohol, but, also, had recently had a cold that may have impacted his sense of smell. Officer D.C. asked appellant if she had consumed anything that would impair her ability to drive, and she stated that she was "on a lot of medications." Officer D.C. then asked appellant if that was "the issue today," and

4.

appellant responded, "Yes." Officer D.C. advised appellant that he planned to do a field sobriety test. He then told her, "Hang tight for me, okay," and walked over to speak with B.G. and another witness.

{¶ 10} While Officer D.C. was speaking with the other witness, appellant suddenly began backing out of her parking space, with her driver-side window down. This maneuver was captured on Officer D.C.'s cruiser camera, which was played for the court during the bench trial. As shown in the camera footage, the following dialogue occurred between Officer D.C. and appellant as the maneuver was taking place:

OFFICER D.C.: Megan! Hey! You're not done yet. Pull back up here.

APPELLANT: I thought we were done.

OFFICER D.C.: No, we're not done. Park the car and turn it off please.

APPELLANT: Okay.

But instead of parking the car and turning it off, appellant made a U-turn and began driving toward the area where the parking lot exited onto Louisiana Avenue. Officer D.C. ran after her, shouting, "Megan!"

{¶ 11} Officer D.C. chased appellant on foot in hopes that she would stop her vehicle, because he feared that she would injure someone if she entered the roadway. While she was making her exit, but before pulling away from the Rite-Aid parking lot,

5.

appellant momentarily stopped her car at a stop sign located near the exit, at which point Officer S.C. was able to catch up to appellant's driver-side window. The window was still down. As Officer D.C. reached the driver-side door, appellant turned her car to the left, in the direction of Officer D.C., and accelerated rapidly onto Louisiana Avenue, nearly causing a collision with oncoming traffic. When appellant turned her car toward Officer D.C., he feared that he would be run over by appellant's left rear tire. Officer D.C. responded by placing his arm on the door jam, in an attempt to push himself away from appellant's car. As appellant quickly accelerated, revving her car, Officer D.C.'s arm slipped into appellant's car and became stuck behind what he believed was the headrest. Officer D.C. continued yelling at appellant to stop, but she persisted in accelerating onto the roadway. Initially, Officer D.C. tried to keep his feet moving alongside the car, in order to avoid being run over by the rear tire. As appellant accelerated down the roadway, Officer D.C. did not believe that he would be able to free his arm from her vehicle. A voice in his head told him that he was going to die, but that it was okay. Within a few seconds, Officer D.C. became detached from the vehicle and was slammed onto the roadway, rolling into oncoming traffic.

{¶ 12} Officer Kimberly Katafias of the Perrysburg Township Police Department responded to appellant's residence at 1909 Hamilton Drive, after being alerted to the events that occurred at the Rite-Aid. The call reporting the crash and injury to Officer D.C. was made at 4:11 p.m., and Officer Katafias arrived at appellant's residence at 4:14

6.

p.m. At 4:15 p.m., appellant's father arrived and opened the garage door, so he could pull his vehicle into the garage. Officer Katafias, who was monitoring the home, looked into the garage and saw the vehicle that appellant drove while she was fleeing the Rite-Aid. Officer Katafias also saw appellant inside the garage attempting to open the door to enter her home. Appellant was swaying, stumbling, and generally having great difficulty opening the door. Officer Katafias and another officer placed appellant into handcuffs. Appellant repeatedly stated, "I just want to go home, just let me go home." Officer Katafias smelled a strong odor of alcohol emanating from appellant. Based on her twenty years of experience in interacting with impaired individuals, as well as on her specialized training regarding detecting alcohol impairment, Officer Katafias concluded that appellant was highly intoxicated.

{¶ 13} Detective Jesse Gomez of the Perrysburg Police Department was another officer who responded to the situation involving Officer D.C. He went initially to the scene at the Rite-Aid and later to appellant's residence, where appellant had been apprehended. Detective Gomez spoke with appellant while she was seated in the back seat of a police cruiser. Upon opening the door, Detective Gomez immediately detected the odor of alcohol and observed appellant's slurred speech, as well as her bloodshot eyes. As a result, Detective Gomez obtained a search warrant to obtain a blood sample from appellant. The sample yielded an ethanol result of 0.34 %.

7.

{¶ 14} As a consequence of the appellant's actions, Officer D.C. suffered a fractured right humerus, whose immediate repair required a nine-hour surgery during which three metal plates and 22 screws were installed.  A few months later, Officer D.C. had a second surgery, to repair damage to his ulnar nerve.  Officer D.C. explained that he has limited strength and mobility in his right arm, and that he still requires physical therapy.  In addition, he has been diagnosed with severe post-traumatic stress disorder, anxiety, and depression.  Because of his injuries, Officer D.C. can no longer perform his job as a police officer.

## Assignments of Error

{¶ 15} Appellant asserts the following assignments of error on appeal:

I. Indefinite sentencing under the Reagan Tokes Act is unconstitutional under the Fourteenth Amendment of the United States Constitution and the applicable sections of the Ohio Constitution.

II. The Trial Court's judgment entry does not comport with the requirements of R.C. 2929.144(A)(B)(2) under the Reagan Tokes Act.

III. The trial court erred to the prejudice of appellant in denying her Rule 29 motion.

## Analysis

{¶ 16} Appellant, in her first assignment of error, challenges as unconstitutional the indefinite sentencing aspect of the Reagan Tokes Law ("the Law").  She argues that

8.

the Law violates the separation-of-powers doctrine, because the determination as to whether she will serve the minimum or an indefinite maximum term is to be made by the Ohio Department of Rehabilitation and Corrections ("ODRC"), which is an executive, rather than a judicial, authority.  She further asserts that her due process rights are violated, because she is not guaranteed a right to legal representation at the ODRC hearing.

{¶ 17} Regarding the Reagan Tokes Law, this court, in *State v. Stenson*, 6th Dist. Lucas No. L-20-1074, 2022-Ohio-2072, has recently explained:

> Senate Bill 201 – The Reagan Tokes Law – became effective on March 22, 2019.  The Law 'significantly altered the sentencing structure for many of Ohio's most serious felonies' by implementing an indefinite sentencing system for non-life, first and second-degree felonies committed on or after its effective date.  *State v. Polley*, 6th Dist. Ottawa No. OT-19-039, 2020-Ohio-3213, 2020 WL 3032862, ¶ 5, fn. 1.  The Law specifies that the indefinite prison terms will consist of a minimum term, selected by the sentencing judge from a range of terms set forth in R.C. 2929.14(A), and a maximum term determined by formulas set forth in R.C. 2929.144.  The Law establishes a presumptive release date from prison at the end of the minimum term, but the [ODRC] may rebut the presumption if it determines, after a hearing, that one or more factors apply, including that

9.

the offender's conduct while incarcerated demonstrates that he continues to pose a threat to society. R.C. 2967.271(B),(C)(1), (2) and (3). If OCRC rebuts the presumption, it may maintain the offender's incarceration for a reasonable, additional period of time, determined by ODRC, but not to exceed the offender's maximum prison term. R.C. 2967.271(D).

*Id.* at ¶ 5.

{¶ 18} In response to Stenson's challenge to the constitutionality of the Law, we found that the Law does not violate the separation-of-powers doctrine and does not, on its face, deprive offenders of their right to due process. *Id.* at ¶ 5. *See also State v. Maddox*, 6th Dist. Lucas No. L-19-1253, 2022-Ohio-1350, ¶ 7, 11, and *State v. Alexander*, 6th Dist. Lucas No. L-21-1129, 2022-Ohio-2430, ¶ 60-79.

{¶ 19} In *State v. Eaton*, 6th Dist. Lucas No. L-21-1121, 2022-2432, ¶ 143, we again found that the Law, on its face, does not violate the separation-of-powers doctrine or infringe upon an offender's due process rights. Regarding the specific process that is due to an offender who faces an additional period of incarceration under the Law, we agree with the analysis articulated in the concurring opinion in *Eaton*, which begins with, and subsequently builds upon, the premise that the presumptive-release provisions of the Law create a liberty interest that is more analogous to probation or parole *revocation* than to probation or parole *eligibility*. *Id.* at 146-147. We agree with this underlying premise for the simple reason that "the review hearing under [the Law] is not focused on whether

10.

the defendant's conduct 'justifies his release from confinement' -- it is focused on whether the defendant's conduct justifies *not* releasing him from confinement." *Id.* at ¶ 147 (Mayle, J., concurring) (distinguishing the lead opinion, wherein it is concluded that the Law creates a liberty interest that is more analogous to probation or parole *eligibility* than to probation or parole *revocation*). Inasmuch as we concur with the due process analysis set forth in the concurring opinion of *Eaton*, we hereby adopt paragraphs 145 through 169 of *Eaton* as our own.

{¶ 20} Based on our reasoning and conclusions in the foregoing cases, we find that the application of the Law to appellant's felony sentence was not unconstitutional, as it was not in violation of the separation-of-powers doctrine and did not violate appellant's due process rights. Accordingly, appellant's first assignment of error is not well-taken.

{¶ 21} Appellant argues in her second assignment of error that the trial court's October 12, 2021 judgment entry that sentenced her to prison did not appropriately specify the indefinite aspect of her sentence pursuant to R.C. 2929.144(A) and (B)(2). R.C. 2929.144(A) and (B)(2) state in applicable part:

(A) As used in this section, "qualifying felony of the first or second degree" means a felony of the first or second degree committed on or after the effective date of this section.

(B) The court imposing a prison term on an offender under division (A)(1)(a) or (2)(a) of section 2929.14 of the Revised Code for a qualifying

felony of the first or second degree shall determine the maximum prison term that is part of the sentence in accordance with the following:

> (2) If the offender is being sentenced for more than one felony, if one or more of the felonies is a qualifying felony of the first or second degree, and if the court orders that some or all of the prison terms imposed are to be served consecutively, the court shall add all of the minimum terms imposed on the offender under division (A)(1)(a) or (2)(a) of section 2929.14 of the Revised Code for a qualifying felony of the first or second degree that are to be served consecutively and all of the definite terms of the felonies that are not qualifying felonies of the first or second degree that are to be served consecutively, and the maximum term shall be equal to the total of those terms so added by the court plus fifty per cent of the longest minimum term or definite term for the most serious felony being sentenced.

In this case, the court ordered appellant to serve a definite minimum term of three years in prison and an indefinite maximum term of four and a half years on Count 1, and a prison sentence of 36 months for Count 2. The court then ordered that Count 1 and Count 2 be served consecutive to one another, but concurrent to the sentences imposed in Counts 3 and 4.

{¶ 22} As appellant acknowledges, the trial court correctly advised appellant at her sentencing that "[t]he [aggregate] minimum term imposed by the Court is six years [and]

[t]he [aggregate] maximum term is seven and a half years." As acknowledged by the state, however, the trial court's October 12, 2021 judgment entry of sentence did not reflect the addition of the minimum definite three-year sentence and the maximum indefinite four-and-a-half year sentence imposed in Count 1 with the terms imposed in Counts 2, 3, and 4, in accordance with the requirements of R.C. 2929.144(A) and (B)(2). The state agrees with appellant that the judgment entry was deficient and should be corrected. We agree.

{¶ 23} This court has held that when a trial court makes an error pursuant to R.C. 2929.144(A) and (B) that the case is to be remanded to the trial court for a resentencing hearing for R.C. 2929.144 compliance purposes. *See State v. Martinez*, 6th Dist. Lucas No. L-21-1020, 2021-Ohio-3994, ¶ 50. Citing *State v. Searls*, 2d Dist. Montgomery No. 28995, 2022-Ohio-858, the state argues that because the error in this case occurred solely in the judgment entry, and not at sentencing, the matter could instead be remanded to the trial court for modification of that entry, rather than for a new sentencing hearing. *See Id.* at ¶ 34, 41 (matter remanded for modification of sentence, rather than a resentencing hearing, in order to achieve compliance with sentencing law where defendant was properly advised at in-person sentencing proceeding). We agree that under the circumstances of this case a resentencing hearing is unnecessary. Instead, the matter will be remanded to the trial court to modify its October 12, 2021 judgment entry so that it complies with the requirements set forth at R.C. 2929.144(A) and (B)(2).

13.

{¶ 24} Accordingly, appellant's second assignment of error is found well taken.

{¶ 25} Appellant argues in her third assignment of error that the trial court erred to her prejudice in denying her Crim.R. 29 motion for acquittal, which challenged the sufficiency of the evidence introduced by the state on the essential elements of Count 1, felonious assault, in violation of R.C. 2903.11(A)(1) and (D)(1)(b), a felony of the first degree, and Count 4, aggravated vehicular assault, in violation of R.C. 2903.08(A)(1)(a) and (B)(1), a felony of the third degree.

{¶ 26} Crim.R. 29 provides in relevant part:

> (A) Motion for judgment of acquittal. The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.

{¶ 27} In *State v. Bates*, 6th Dist. Williams No. WM-12-002, 2013-Ohio-1270, this court set forth the standard to be used in reviewing a Crim.R. 29(A) motion, as follows:

> We review a ruling on a Crim.R. 29(A) motion under the same standard used to determine whether the evidence was sufficient to sustain a

14.

conviction. *State v. Brinkley*, 105 Ohio St.3d 231, 2005-Ohio-1507, 824 N.E.2d 959, ¶ 40. Under the sufficiency standard, we must determine whether the evidence admitted at trial, 'if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *See also State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541 (1997). Therefore, '[t]he verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier-of-fact.' *State v. Dennis*, 79 Ohio St.3d 421, 430, 1997-Ohio-372, 683 N.E.2d 1096 (1997), citing *Jenks*, at paragraph two of the syllabus.

In determining whether the evidence is sufficient to support the conviction, the appellate court does not weigh the evidence nor assess the credibility of the witnesses. *State v. Walker*, 55 Ohio St.2d 208, 212, 378 N.E.2d 1049 (1978). *See also State v. Willard*, 144 Ohio App.3d 767, 777-778, 761 N.E.2d 688 (10th Dist.2001). If the state 'relies on circumstantial

15.

evidence to prove an element of the offense charged, there is no requirement that the evidence must be irreconcilable with any reasonable theory of innocence in order to support a conviction[,]' so long as the jury is properly instructed as to the burden of proof, i.e., beyond a reasonable doubt. *Jenks* at paragraph one of the syllabus.

*Id.* at ¶ 49-50.

{¶ 28} R.C. 2903.11(A)(1) and (D)(1)(b), which codifies the offense of felonious assault, states in applicable part:

> (A) No person shall knowingly do either of the following:
>
> (1) Cause serious physical harm to another or to another's unborn;
>
> (D)(1)(b) * * * If the victim of the offense is a peace officer * * * and if the victim suffered serious physical harm as a result of the commission of the offense, felonious assault is a felony of the first degree * * *.

{¶ 29} The mental state of "knowingly" is defined under R.C. 2901.22(B), which provides:

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When

knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

{¶ 30} Appellant argues that because she did not intend to injure Officer D.C., her crime was not committed knowingly.

{¶ 31} The court in *State v. Magee*, 2020-Ohio-4351, 158 N.E.3d 630 (12th Dist.), expounded on the level of awareness that is required to establish the element of "knowingly," stating as follows:

> "'It is a fundamental principle that a person is presumed to intend the natural, reasonable and probable consequences of his voluntary acts.'" *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 143, quoting *State v. Johnson*, 56 Ohio St.2d 35, 39, 381 N.E.2d 637 (1978). An accused need not foresee the precise consequences of his conduct. *State v. Taylor*, 12th Dist. Fayette No. CA2018-11-021, 2019-Ohio-3437, ¶ 46. 'To be actionable it is only necessary that the result is within the natural and logical scope of risk created by the conduct.' *Id.*, citing *State v. Spates*, 8th Dist. Cuyahoga No. 100933, 2015-Ohio-1014, ¶ 54.

*Magee* at ¶ 46.

17.

**{¶ 32}** In the instant case, it is undisputed that appellant set into motion the sequence of events by speeding away from a crime scene, while drunk, with Officer D.C. clinging to her car, mere inches away from her open driver-side window, and yelling at her to stop. Serious injury to Officer D.C. was certainly within the natural and logical scope of risk created by appellant's conduct.

**{¶ 33}** Whether appellant specifically intended to cause Officer D.C. any serious harm, or whether she knew that her actions would cause the precise injury suffered by Officer D.C. are not relevant inquiries when examining the evidence required to establish the element of "knowingly." *See State v. Jacinto*, 2020-Ohio-3722, 155 N.E.3d 1056, ¶ 99 (8th Dist.) ("[N]either [Jacinto's] purpose nor his lack of knowledge that his act would cause the precise injury [Lee] suffered are the relevant inquiries when examining the evidence required to establish the knowingly element.").

**{¶ 34}** Viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of felonious assault, including the element of "knowingly," proven beyond a reasonable doubt. *See Bates*, 6th Dist. Williams No. WM-12-002, 2013-Ohio-1270, 611, ¶ 49.

**{¶ 35}** R.C. 2903.08(A)(1)(a), which codifies the offense of aggravated vehicular assault, pertinently provides:

(A) No person, while operating or participating in the operation of a motor vehicle * * * shall cause serious physical harm to another person * * * in any of the following ways:

(1)(a) As the proximate result of committing a violation of division (A) of section 4511.19 of the Revised Code or of a substantially equivalent municipal ordinance;

{¶ 36} Appellant was convicted of violating R.C. 4511.19(A)(1)(f), which provides:

(A)(1) No person shall operate any vehicle * * * within this state, if, at the time of the operation, any of the following apply:

(f) The person has a concentration of seventeen-hundredths of one per cent or more by weight per unit volume of alcohol in the person's whole blood.

{¶ 37} In the instant case, appellant does not challenge the evidence showing that she operated her vehicle while under the influence of alcohol. Instead, she argues that her operation of the vehicle did not proximately cause the serious physical harm that was suffered by Officer D.C. In fact, she suggests that it was "[Officer D.C.'s] actions, not Appellant's, which included chasing after her vehicle on foot and reaching into the moving vehicle, which led to the proximate result of [Officer D.C.] sustaining serious physical harm."

19.

**{¶ 38}** Both in general terms, and specifically as applied to aggravated vehicular

assault, the actions of a victim play no role in negating the culpability of the defendant.

> Generally in Ohio, another's potential contribution to the death or injury of
>
> a victim is not a valid defense to criminal conduct unless that contribution
>
> was the sole proximate cause of injury or death. *State v. Galvin*, 8th Dist.
>
> Cuyahoga No. 103266, 2016-Ohio-5404, ¶ 20. If the defendant's criminal
>
> action contributes to, in other words, is the proximate cause of, the death or
>
> injury, another's conduct is irrelevant. *Id.* There is no contributory
>
> negligence analog in criminal law.

*State v. Smith*, 2017-Ohio-537, 85 N.E.3d 304, ¶ 7 (8th Dist.). Thus, Officer D.C. is in

no way blameworthy for the injuries he suffered during the incident in question.

**{¶ 39}** With respect to the question of appellant's culpability, we look to *State v.*

*Purdy,* 11th Dist. Lake No. 2015-L-054, 2016-Ohio-1302, ¶20, which states:

> '"The general rule is that a defendant's conduct is the proximate cause of
>
> injury or death to another if the defendant's conduct (1) is a "substantial
>
> factor" in bringing about the harm and (2) there is no other rule of law
>
> relieving the defendant of liability."' *State v. Filchock*. 166 Ohio App.3d
>
> 611, 2006-Ohio-2242, 852 N.E.2d 759, ¶ 77 (11th Dist.), quoting *State v.*
>
> *Flanek*, 8th Dist. Cuyhahoga No. 63308, 1993 WL 335601 (Sept. 2, 1993).
>
> 'A defendant cannot escape criminal liability merely because factors other

than his actions contributed to the death or injury to the victims, unless the other factors were the *sole* proximate cause.' *State v. Ward*, 2d Dist. Montgomery No. 18211, 2001 WL 220244 (Mar. 2, 2001), citing *Flanek* at *19 (emphasis in original).

{¶ 40} In the instant case, the evidence established that appellant's driving while under the influence of alcohol caused her to flee the scene and that, in fleeing the scene, she caused serious physical harm to Officer D.C.  Viewing the evidence most strongly in favor of the prosecution, we conclude that there was sufficient evidence that appellant's conduct in violating R.C. 4511.19(A)(1)(f), i.e., operating her vehicle under the influence of alcohol, was the proximate cause of Officer D.C.'s injuries.  *See Bates*, 6th Dist. Williams No. WM-12-002, 2013-Ohio-1270, 611, at ¶ 49.

{¶ 41} For all of the foregoing reasons, appellant's third assignment of error is found not well-taken.

{¶ 42} The judgment of the Wood County Court of Common Pleas is affirmed; however, the matter will be remanded to the trial court for a nunc pro tunc entry that conforms with the sentence imposed during the sentencing hearing.  Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed
and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

Christine E. Mayle, J.

Myron C. Duhart, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.